1

2   Robert P. Huckaby   CA#97633
    3330 Lake Tahoe Blvd. #10
3   South Lake Tahoe, CA  96150
    Tel (530) 544-4697
    Fax (530) 544-7760
4   Email:  bobhuckaby@aol.com

5   ATTORNEY FOR DEBTOR,
    EDDIE & FLORA BATOON

6

7

8                    UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE

10

11  In re                          )    CASE NO.  23-50592
                                   )    Chapter 11
12  EDDIE PASCUA BATOON,           )
    FLORA LLANES BATOON,           )    NOTICE OF REMOVAL OF LAWSUIT
13                                 )    PENDING IN EL DORADO SUPERIOR
                   Debtors.        )    COURT TO BANKRUPTCY COURT
14  _____)    (28 U.S.C. §1452(a))
                                   )
15  JACOB DEGOLISH, dba            )    CASE NO. 22CV1845
    ASSEMBLE CAPITAL LLC,          )
16                   Plaintiff,    )
    vs.                            )
17                                 )
    PLACER TITLE COMPANY,          )
18  COLDWELL BANKER LLC,           )
    FLORA BATOON, and              )
19  JOSEPH RIFFEL,                 )
                   Defendants.     )
20  _____)

21          TO THE COURT AND ALL INTERESTED PERSONS:

22          PLEASE TAKE NOTICE that debtors EDDIE PASCUA BATOON and FLORA

23  LLANES BATOON, pursuant to 28 U.S.C. §1452(a) and FRBP 9027, hereby remove the civil

24  lawsuit pending in El Dorado Superior Court, Case No. 22CV1845, to the Bankruptcy Court

25  where their Chapter 11 case is pending.

26          1.      The within Bankruptcy action was filed by debtors Eddie Pascua Batoon and

27  Flora Llanes Batoon on 6/4/2023 as a Petition under Chapter 11 of the Bankruptcy Code, in the

28  Bankruptcy Court for the Northern District of California, San Jose Branch, as determined by

                                    Page 1

1    debtors' residence address.

2        2.      The action being removed is pending in the California Superior Court in the

3    County of El Dorado, 1354 Johnson Boulevard, South Lake Tahoe, CA 96150, Case No.

4    22CV1845, filed on 12/19/2022.

5        3.      The action being removed is a Complaint by JACOB DEGOLISH, dba

6    ASSEMBLE CAPITAL LLC, as plaintiff, versus PLACER TITLE COMPANY, a California

7    Corporation, COLDWELL BANKER LLC, a Delaware Limited Liability Company, FLORA

8    BATOON, and JOSEPH RIFFEL, as defendants.

9        4.      The subject action is a Complaint for Fraud and Fraudulent Concealment,

10   whereby plaintiff is seeking to avoid its performance required under a contract to purchase the

11   motel known as Sky Lake Lodge in South Lake Tahoe, California, and to recover damages from

12   defendants, including debtor herein Flora Batoon.  The subject property is titled to Ginger

13   Mountain Lodge LLC, a California limited liability company, of which debtor Flora Batoon is an

14   owner and managing member.

15       5.      The subject action is not a proceeding before the United States Tax Court, and is

16   not a civil action by a governmental unit to enforce its police or regulatory power.

17       6.      The subject action is a core proceeding under 28 U.S.C. §157(O) as one affecting

18   the liquidation of the assets of the bankruptcy estate, and is not a personal injury tort or wrongful

19   death claim.

20       7.      This Court has jurisdiction over the subject action pursuant to 28 U.S.C.

21   §1334(b).

22       8.      Removal of the subject action is proper pursuant to 28 U.S.C. §1452(a) and FRBP

23   9027.

24       9.      Debtors consent to entry of a final order in the action by a bankruptcy judge.

25       10.     This removal applies to all parties and all causes of action in the subject lawsuit.

26       11.     Counsel for plaintiff Jacob DeGolish is Dana B. Denno, McCormick, Barstow,

27   Sheppard, Wayte & Carruth LLP, 7647 North Fresno Street, Fresno, CA 93720.

28       12.     Counsel for defendant Placer Title Company is Douglas R. Roeca, 3080 Cedar

Case: 23-05016   Doc# 1   Filed: 06/27/23   Entered: 06/27/23 10:05:52   Page 2 of 104

1  Ravine Road, Placerville, CA 95667.

2       13.    Counsel for defendant Coldwell Banker LLC is Debra L. Samuels, 2281 Lava

3  Ridge Court #300, Roseville, CA 95661.

4       14.    Counsel for defendant Joseph Riffel is Debra L. Samuels, 2281 Lava Ridge Court

5  #300, Roseville, CA 95661.

6       15.    Attached as exhibits are the pertinent pleadings in the subject action:

7  Exhibit 1 – Complaint

8  Exhibit 2 – Demurrer by Flora Batoon to Complaint, now set for hearing on 8/4/2023 at

9  8:30 am in Dept. 9.

10  Exhibit 3 – Demurrer by Placer Title Company to Complaint, now set for hearing on

11  8/4/2023 at 8:30 am in Dept. 9.

12  Dated:  June 26, 2023

                                    /s/ Robert P. Huckaby
13                                  _____

14                                  Robert P. Huckaby,
                                    Attorney for Debtor

Case: 23-05016    Doc# 1    Filed: 06/27/23    Entered: 06/27/23 10:05:52    Page 3 of 104

<u>CERTIFICATE OF SERVICE</u>

On this date I served the foregoing document on the interested parties in this action by placing a true copy thereof in a sealed envelope and depositing such envelope in the mail at South Lake Tahoe, California, first class postage prepaid, addressed as follows:

Dana B. Denno
McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno St.
Fresno, CA 93720

Douglas R. Roeca
3080 Cedar Ravine Rd.
Placerville, CA 95667

Debra L. Samuels
221 Lava Ridge Court #300
Roseville, CA 95661

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: June 26, 2023

/s/ Robert P. Huckaby
_____
Robert P. Huckaby,

EDDIE & FLORA BATOON                                        CASE NO. 23-50592

# EXHIBIT 1

1  McCormick, Barstow, Sheppard,
   Wayte & Carruth LLP
2  Dana B. Denno, #227971
     *dana.denno@mccormickbarstow.com*
3  7647 North Fresno Street
   Fresno, California 93720
4  Telephone:    (559) 433-1300
   Facsimile:    (559) 433-2300
5
   Jordan Finfer *(Pro hac vice application pending)*
6  Patzik, Frank & Samotny Ltd.
   200 S. Wacker, Suite 2700
7  Chicago, IL 60606
   JFinfer@pfs-law.com
8
   Attorneys for Jacob DeGolish d/b/a/ Assemble
9  Capital LLC

10

11                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

12              COUNTY OF EL DORADO SOUTH LAKE TAHOE COURTHOUSE

13

14  JACOB DEGOLISH, d/b/a ASSEMBLE          Case No.  22 CV 1845
    CAPITAL LLC,
15
                Plaintiff,                  **COMPLAINT FOR FRAUD AND**
16                                          **FRAUDULENT CONCEALMENT**
         v.
17
    PLACER TITLE COMPANY, a California
18  Corporation, COLDWELL BANKER LLC, a
    Delaware Limited Liability Company, FLORA
19  BATOON and JOSEPH RIFFEL

20              Defendants.                             **FILE**
                                                       **BY FAX**
21

22       Plaintiff, Jacob DeGolish (hereinafter "Assemble"), for causes of action against Defendants,

23  Placer Title Company ("Placer Title"), Coldwell Banker, LLC a Delaware Limited Liability

24  Company ("CB"), Flora Batoon ("Flora") and Joseph Riffel, ("Joe") and each of them, as follows:

25                         **NATURE OF THIS ACTION**

26       1.      Assemble is in the business of acquiring and rehabbing real estate to make it more

27  marketable.

28       2.      In October of 2021, Assemble entered into a contract with whom he thought was

NOTICE OF APPLICATION AND APPLICATION FOR AN ORDER PERMITTING JORDAN FINFER TO
APPEAR AS COUNSEL *PRO HAC VICE* FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES;
VERIFIED APPLICATION OF JORDAN FINFER ; AND DECLARATION OF DANA DENNO

Case: 23-05016   Doc# 1   Filed: 06/27/23   Entered: 06/27/23 10:05:52   Page 6 of 104

FILED
DEC 19 2022
EL DORADO CO. SUPERIOR COURT
BY  W. Warden
(DEPUTY CLERK)

1  Ginger Mountain to acquire a 23 unit motel in South Lake Tahoe (the "Contract").

2  3.  After nearly eleven months of Assemble performing its obligations under the
3  Contract, incurring thousands of dollars of costs, it learned that Ginger Mountain had not approved
4  the entering of the Contract with Assemble; that Flora, the signatory to the Contract did not have
5  the authority to act alone and that there was a dispute between Flora and her business partner, Julia
6  Durward ("Julia") about the terms of such deal.

7  4.  Worse yet, every other party to the transaction – the broker, Joe, the escrow agent,
8  Placer Title – knew that Flora was acting without authority and did not disclose it to Assemble. Joe
9  and Placer Title were complicit in the fraud perpetrated upon Assemble and like Flora, should be
10 held to account for the damages incurred by Assemble.

11                                    **THE PARTIES**

12 5.  Assemble is an individual, residing in the City of South Lake Tahoe, California and
13 is in the business of acquiring and rehabbing real estate.

14 6.  Placer Title is a Corporation organized under the law of the State of California with
15 its principal place of business at 1508 Eureka Road, Suite 100, Roseville, CA 95661. Placer Title
16 is in the business of insuring title to real estate and acting as escrow agent on real estate matter.
17 Placer Title acted as escrow agent under the Contract.

18 7.  Coldwell Banker is a Limited Liability Company organized under the laws of the
19 State of Delaware, authorized to do business in the state of California with its principal place of
20 business located at 2196 Lake Tahoe Blvd., South Lake Tahoe, CA 96150 and is in the business of
21 brokering real estate transactions.

22 8.  Flora is an individual residing in the City of San Jose, California.

23 9.  Joseph Riffel is an individual, real estate broker, doing business in the City of South
24 Lake Tahoe, California.

25                              **JURISDICTION AND VENUE**

26 10.  This Court has general jurisdiction over this matter as then dispute arises from a
27 property located in El Dorado County, South Lake Tahoe, California.

28 11.  This Court has personal jurisdiction over each of the Defendants.  Defendants

McCormick, Barston,
Sheppard, Wayte &
Carruth LLP
TWO NORTH FIRST STREET
FRESNO, CA 93721

NOTICE OF APPLICATION AND APPLICATION FOR AN ORDER PERMITTING JORDAN FINFER TO
APPEAR AS COUNSEL *PRO HAC VICE* FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES;
VERIFIED APPLICATION OF JORDAN FINFER ; AND DECLARATION OF DANA DENNO

1 purposefully, continuously, and systematically conduct business in California.

2     12.     Defendants each operate physical business locations in California and reside in
3 California.

4     13.     Venue is proper in this Court because Defendants conduct business in this County.
5 Venue is additionally proper in this County in that the claims arose as a result of acts
6 committed by Defendants within this County.

7                         **BACKGROUND FACTS**

8     14.     Ginger Mountain Lodge LLC ("Ginger Mountain) is a Limited Liability Company
9 organized under the laws of the State of California with its with its principal place of business at
10 2971 Mitton Drive, San Jose, CA 95148. Ginger Mountain is in the business of holding title to a 23
11 unit motel, with an address commonly known as 2644 Lake Tahoe Blvd., South Lake Tahoe, CA,
12 96150 (the "Property").

13     15.     Ginger Mountain had partners: Eddie Batoon, Flora Batoon, and Julia Duward.

14     16.     Pursuant to Article V, Section 5.1 and 5.2 of the Ginger Mountain Operating
15 Agreement, any decision concerning the business requires a simple majority vote of the members.

16     17.     On or about October 28, 2021, Flora, purportedly on behalf of Ginger Mountain,
17 entered into the Contract with Assemble to sell the Property to Assemble for $2,210,000.00. A copy
18 of the Contract and all Addendums is attached hereto as Exhibit 1.

19     18.     Pursuant to Paragraph 28 of the Contract, Flora represented that she was signing the
20 Contract on behalf of Ginger Mount and that she had the authority to act on its behalf.

21     19.     At that time Flora made this representation it was false and Flora knew it to be false.

22     20.     At the time Flora signed the Contract, her broker Joe, knew that she did not have
23 such authority but did not share this information with Assemble.

24     21.     Pursuant to Paragraph 7(c) of the Contract, Flora selected Placer Title to act as the
25 Escrow Agent.

26     22.     In reliance upon the representations made by Flora to Assemble, Assemble deposited
27 a non-refundable earnest money payment of $22,100 with Placer Title.

28     23.     From the date of the Contract being entered into through the filing of this lawsuit,

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NOTICE OF APPLICATION AND APPLICATION FOR AN ORDER PERMITTING JORDAN FINFER TO
APPEAR AS COUNSEL *PRO HAC VICE* FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES;
VERIFIED APPLICATION OF JORDAN FINFER ; AND DECLARATION OF DANA DENNO

1  testing conducted.

2      35.    As part of Assemble's renovation plan it was going to acquire an adjacent parcel to
3  expand the footprint of the Property and make it more marketable. Assemble paid the owner of the
4  adjacent parcel a non-refundable, $12,500 to secure a one-year exclusive purchase option for that
5  parcel.

6      36.    Joe was the broker for the adjacent parcel.

7      37.    On August 3, 2022, Assemble and Flora, purportedly on behalf of Ginger Mountain,
8  entered into Addendum Four, whereby they agreed that Assemble would pay to Ginger Mountain
9  rents it would have otherwise received from tenants that Assemble had evicted from the Property.

10     38.    Assemble also retained counsel to assist in the negotiation of the Contract, the
11  property management contract with a third party, the general construction contract and to assist
12  generally in the project. Assemble incurred $30,000 of legal fees related to this work.

13     39.    All told, Assemble incurred more than $135,000 of costs related to closing on the
14  Property.

15     40.    On or about September 14, 2022, Assemble and Flora, purportedly on behalf of
16  Ginger Mountain, executed Addendum 6 to the Contract whereby Assemble agreed to release an
17  additional $20,000 of non-refundable earnest money to Ginger Mountain by September 16, 2022.
18  *See* Exhibit 1.

19     41.    After Assemble had not heard from Placer Title regarding wiring the $20,000, to be
20  released he called Lila Rohrich at Placer Title to inquire about the status of such funds. At that time,
21  Lila informed Assemble that there was another Fifty Percent partner in Ginger Mountain and that
22  there was a dispute between the partners regarding the sale of the Property.

23     42.    Lila further informed Assemble that she had  been aware of this dispute for more
24  than eight months.

25     43.    Assemble inquired of Lila how Placer Title could have released $30,000 of escrow
26  funds when it had knowledge that there was not a valid agreement to sell the Property, to which Lila
27  did not have an answer, stating she hoped it closed.

28     44.    In October of 2022, Assemble inquired from Ginger Mountain's counsel its ability

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

5
NOTICE OF APPLICATION AND APPLICATION FOR AN ORDER PERMITTING JORDAN FINFER TO
APPEAR AS COUNSEL *PRO HAC VICE* FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES;
VERIFIED APPLICATION OF JORDAN FINFER ; AND DECLARATION OF DANA DENNO

Case: 23-05016   Doc# 1   Filed: 06/27/23   Entered: 06/27/23 10:05:52   Page 9 of 104

1   to close on the Property despite the lack of consensus among its partners to sell the Property.

2       45.    Counsel for Flora's partners advised that an agreement had not been reached to the
3   sell Property.

4       46.    Assemble could not continue to pursue the transaction in light of Ginger Mountain's
5   inability to sell it. Nor could Assemble wait.

6       47.    Assemble was continuing to incur costs with its lender who certainly would not have
7   agreed to finance a purchase of the Property without confirmation that the entity holding title had
8   agreed to such a sale.

9       48.    Assemble was continuing to incur costs related to the renovation project it was
10   planning post closing.

11       49.    In light of all of this, on October 13, 2022, Assemble sent notice to Ginger Mountain,
12   its counsel, Coldwell Banker and Placer Title informing all parties that it had concluded the Contract
13   was not binding and that it would pursue recovery of its costs through litigation if necessary. A copy
14   of that demand letter is attached hereto as Exhibit 2.

15                               **CLAIMS FOR RELIEF**
                                   **COUNT ONE**
16                           **Fraud Against Flora Batoon**

17       50.    Assemble incorporates by reference the allegations contained in paragraphs 1
18   through 49, inclusive, as and for this paragraph.

19       51.    Flora represented to Assemble that she had the authority to act and bind Ginger
20   Mountain to the Contract.

21       52.    This representation was false.

22       53.    At all relevant times, Flora knew that Ginger Mountain had not conducted a vote of
23   whether to sell the Property and that she did not have the unilateral authority to sell the Property
24   without such a vote.

25       54.    Flora's misrepresentation was intended to induce Assemble to rely upon it.

26       55.    Assemble did rely upon Flora's false representation, incurring substantial costs and
27   devoting substantial time to acquiring, closing and renovating the Property.

28       56.    Assembles reliance upon Flora's misrepresentation was justified, because Flora was

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
3641 NORTH FRESNO STREET
FRESNO, CA 93720

NOTICE OF APPLICATION AND APPLICATION FOR AN ORDER PERMITTING JORDAN FINFER TO
APPEAR AS COUNSEL *PRO HAC VICE* FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES;
VERIFIED APPLICATION OF JORDAN FINFER ; AND DECLARATION OF DANA DENNO

1 the point of contact for the sale of the Property, provided Assemble with access to the Property,

2 including permitting Assemble to evict tenants from the Property.

3 57. But for Flora's misrepresentation, Assemble would not have incurred any costs

4 associated with acquiring the Property.

5 58. As a result of Flora's misrepresentation, Assemble has been damaged in an amount

6 greater than $135,000.

7 <center>**COUNT TWO**
**Fraudulent Concealment against Coldwell Banker and Joseph Riffel**</center>

8

9 59. Assemble incorporates by reference the allegations contained in paragraphs 1

10 through 49, inclusive, as and for this paragraph.

11 60. At all times relevant hereto, Joseph Riffel was acting as an agent of Coldwell Banker.

12 61. At all times relevant hereto, Joseph Riffel was purportedly acting as the broker for

13 the sale of the Property on behalf of Ginger Mountain.

14 62. Prior to Flora entering into the Contract with Assemble, purportedly on behalf of

15 Ginger Mountain, Joseph Riffel was aware that Flora did not have the authority nor approval from

16 her partners to enter into the Contract with Assemble.

17 63. Joseph knew, and thus had a duty to Assemble to disclose that Flora did not have the

18 authority to bind Ginger Mountain to the Contract with Assemble.

19 64. At all times relevant hereto, Joseph concealed from Assemble that Flora did not have

20 the authority to bind Ginger Mountain to the Contract with Assemble.

21 65. Joseph's concealment was intentional, designed to cause Assemble to act in reliance

22 upon that concealment.

23 66. Assembles reliance upon Joe's misrepresentation was justified, because Joe was the

24 point of contact for the sale of the Property, provided Assemble with access to the Property and

25 often relayed information from Flora to Assemble.

26 67. At all times relevant hereto, Assemble was unaware that Flora did not have the

27 authority to bind Ginger Mountain to the Contract.

28 68. Had Assemble known that Flora did not have the authority to bind Ginger Mount to

7

MCCORMACK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NOTICE OF APPLICATION AND APPLICATION FOR AN ORDER PERMITTING JORDAN FINFER TO
APPEAR AS COUNSEL *PRO HAC VICE* FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES;
VERIFIED APPLICATION OF JORDAN FINFER ; AND DECLARATION OF DANA DENNO

1 the Contract, it would not have entered into the Contract nor incurred the substantial costs and time
2 related to acquiring the Property.

3      69.    As a result of Joseph's concealment, Assemble has been damaged in an amount
4 greater than $135,000.

## COUNT THREE
### Fraudulent Concealment Against Placer Title

     70.    Assemble incorporates by reference the allegations contained in paragraphs 1
through 49, inclusive, as and for this paragraph.

     71.    At all times relevant hereto, Lila was acting as an agent of Placer Title.

     72.    At all times relevant hereto, Lila was working for Placer Title in its capacity as
Escrow Agent under the Contract.

     73.    Prior to Flora entering into the Contract with Assemble, purportedly on behalf of
Ginger Mountain, Lila was aware that Flora did not have the authority nor approval from her
partners to enter into the Contract with Assemble.

     74.    Lila had a duty to Assemble to disclose that Flora did not have the authority to bind
Ginger Mountain to the Contract with Assemble.

     75.    At all times relevant hereto, Lila concealed from Assemble that Flora did not have
the authority to bind Ginger Mountain to the Contract with Assemble.

     76.    Assemble justifiably relied upon Placer Title to insure that Ginger Mountain had
approved the transaction and its reliance upon Ginger Mountain was reasonable in light of its
position to learn such information from Ginger Mountain.

     77.    Lila's concealment was intentional and designed to cause Assemble to act in reliance
upon that concealment.

     78.    At all times relevant hereto, Assemble was unaware that Flora did not have the
authority to bind Ginger Mountain to the Contract.

     79.    Had Assemble known that Flora did not have the authority to bind Ginger Mount to
the Contract, it would not have entered into the Contract nor incurred the substantial costs and time
related to acquiring the Property.

8

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

NOTICE OF APPLICATION AND APPLICATION FOR AN ORDER PERMITTING JORDAN FINFER TO
APPEAR AS COUNSEL *PRO HAC VICE* FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES;
VERIFIED APPLICATION OF JORDAN FINFER ; AND DECLARATION OF DANA DENNO

1    80.    As a result of Lila's concealment, Assemble has been damaged in an amount greater

2    than \$135,000.

3    **PRAYER FOR RELIEF**

4    **WHEREFORE**, Assemble respectfully requests that the Court enter judgment in its favor

5    and against the Defendants:

6        1.    On all causes of action for actual damages in an amount to be determined at trial;

7        2.    For costs of Suit in the amount according to proof;

8

9        3.    For such other and further relief as the Court may deem just and equitable.

10

11    Dated: December 19, 2022                    McCORMICK, BARSTOW, SHEPPARD,
                                                 WAYTE & CARRUTH LLP
12

13                                               By: _____

14                                                        Dana B. Denno
                                                 Attorneys for Jacob DeGolish d/b/a/ Assemble Capital
15                                                                  LLC

16    099930-001467 8804487.1

17

18

19

20

21

22

23

24

25

26

27

28

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
5447 NORTH FRESNO STREET
FRESNO, CA 93720

NOTICE OF APPLICATION AND APPLICATION FOR AN ORDER PERMITTING JORDAN FINFER TO
APPEAR AS COUNSEL *PRO HAC VICE* FOR PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES;
VERIFIED APPLICATION OF JORDAN FINFER ; AND DECLARATION OF DANA DENNO

# "Exhibit 1"



**CALIFORNIA ASSOCIATION OF REALTORS®**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RIPA, Revised 12/18)

Date Prepared: 10/23/2021

1. **OFFER:**
   A. THIS IS AN OFFER FROM _Assemble Capital LLC_ ("Buyer").
   ☐ Individual(s), ☐ A Corporation, ☐ A Partnership, ☒ An LLC, ☐ An LLP, ☐ Other _____
   B. THE REAL PROPERTY to be acquired is _2644 Lake Tahoe Boulevard_ , situated in _South Lake Tahoe_ (City), _El Dorado County_ (County), California, _96150_ (Zip Code), Assessor's Parcel No. _031-241-006-000_ ("Property").
   C. THE PURCHASE PRICE offered is _Two Million Two Hundred Ten Thousand_
   Dollars $ _2,210,000_ .
   D. CLOSE OF ESCROW shall occur on ☐ _____ (date)(or ☒ 60 Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. DISCLOSURE: The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. CONFIRMATION: The following agency relationships are confirmed for this transaction:
   Seller's Brokerage Firm _Coldwell Banker_ License Number _01351844_
   is the broker of (check one): ☒ the seller; or ☐ both the buyer and seller. (dual agent)
   Seller's Agent _Joseph Rilfel_ License Number _01180310_
   is (check one): ☒ the Seller's Agent (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

   Buyer's Brokerage Firm _Hollywood Estates_ License Number _02014153_
   is the broker of (check one): ☒ the buyer; or ☐ both the buyer and seller. (dual agent)
   Buyer's Agent _Oliver Thornton_ License Number _01000327_
   is (check one): ☒ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
   C. POTENTIALLY COMPETING BUYERS AND SELLERS: The Parties each acknowledge receipt of a ☒ "Potential Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Deposit shall be in the amount of .................................... $ _22,100_
   (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days after Acceptance (or _____);
   OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____) to the agent submitting the offer (or to _____), made payable to _____. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or _____).
   Deposit checks given to agent shall be an original signed check and not a copy.
   (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ _____
   within _____ Days After Acceptance (or _____).
   If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ ALL CASH OFFER: No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within 3 (or _____) Days After Acceptance, Deliver to Seller such verification.
   D. LOAN(S):
   (1) FIRST LOAN: In the amount of ..................................................... $ _1,436,500_
   This loan will be conventional financing OR ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ subject to financing, ☐ Other _____. This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
   (2) ☐ SECOND LOAN in the amount of ................................................... $ _____
   This loan will be conventional financing OR ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ subject to financing, ☐ Other _____. This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
   (3) FHA/VA: For any FHA or VA loan specified in 3D(1), Buyer has 17 (or ___ ) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this transaction.

Buyer's Initials ( _Neill_ )
Seller's Initials ( _FB_ )( _____ )

© 2018, California Association of REALTORS®, Inc.
RIPA REVISED 12/18 (PAGE 1 OF 12)

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 1 OF 12)**

DocuSign Envelope ID: C985C0D9-784E-44E6-8958-EE7624EBF316

DocuSign Envelope ID: 72C9EAC2-F7D8-4877-8E24-67A2EE5D42BF

Property Address: 2644 Lake Tahoe Boulevard, South Lake Tahoe, CA 86150 _____ Date: 10/23/2021

**E. ADDITIONAL FINANCING TERMS:** _____

**F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . $ 791,400
to be deposited with Escrow Holder pursuant to Escrow Holder Instructions.

**G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 2,210,000

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ___ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 19B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or 45 ) Days After Acceptance.

**J. LOAN TERMS:**

(1) **LOAN APPLICATIONS:** Within 3 (or ___ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are not contingencies of this Agreement.

(3) **LOAN CONTINGENCY REMOVAL:**

Within 21 (or 45 ) Days After Acceptance, Buyer shall, as specified in paragraph 19, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(4) ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

(6) **ASSUMED OR SUBJECT TO FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal council regarding the ability of an existing lender to call the loan due, and the consequences thereof.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

A. This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

A. **ADDENDA:**

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum # _____ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other _____ |

B. **BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other _____ |

**6. OTHER TERMS:**

Reference "Letter of Intent to Purchase 2644 Lake Tahoe Blvd" addendum.

_____

Buyer's Initials ( ____X____ ) Seller's Initials ( FB X ____ )

DocuSign Envelope ID: C98SC0D9-7B4E-44E6-8B5D-EE7524EBF318

DocuSign Envelope ID: 72C9EAC2-F7D6-4877-8E24-87A2EE5D420F

Property Address: 2044 Lake Tahoe Boulevard, South Lake Tahoe, CA 96150 _____ Date: 10/21/2021

### 7. ALLOCATION OF COSTS

A. **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.

(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____

(2) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____

(3) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____

B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

(2) (i) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(II) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(III) Buyer shall be provided, within the time specified in paragraph 19A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) ☐ Buyer ☐ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed prior to Close Of Escrow. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance, if required by Law.

(4) ☐ Buyer ☐ Seller shall pay for installation of drain cover and anti-entrapment device or system for any pool or spa meeting the minimum requirements permitted by the U.S. Consumer Products and Safety Commission.

C. **ESCROW AND TITLE:**

(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee _Hash pay their own_ _____

(b) Escrow Holder shall be _Sellers choice_

(c) The Parties shall, within 5 (or ____ ) Days After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 18E _____

(b) Owner's title policy to be issued by _Sellers choice_ _____

(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

D. **OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay for County transfer tax or fee _____

(2) ☐ Buyer ☒ Seller shall pay City transfer tax or fee _____

(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pay for any HOA certification fee.

(7) ☐ Buyer ☒ Seller shall pay for any private transfer fee _____

(8) ☐ Buyer ☐ Seller shall pay for _____

(9) ☐ Buyer ☐ Seller shall pay for _____

(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____, of a ☐ standard ☐ upgraded one-year home warranty plan, issued by _____, with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____

Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR ☒ Buyer waives the purchase of a home warranty policy. Nothing in this paragraph precludes Buyer's purchasing a home warranty policy during the term of the Agreement.

### 8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:

A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in paragraph 8B, C or D.

B. **ITEMS INCLUDED IN SALE:**

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers and security systems/alarms.

(3) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller, except (i) _____ and (ii) the items and systems identified pursuant to 8B(4).

(4) LEASED OR LIENED ITEMS AND SYSTEMS: Seller shall, within the time specified in paragraph 19A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 19B and C.

(5) Except as otherwise specified or disclosed, all items included shall be transferred free and clear of liens and encumbrances and without Seller warranty regardless of value.

Buyer's Initials ( _JDGM_ )( _____ )

RIPA REVISED 12/18 (PAGE 3 OF 12)

Seller's Initials ( _FB_ )( _____ )

DocuSign Envelope ID: C985C0D9-7D4E-44E6-8B5B-EE7524E0F316
DocuSign Envelope ID: 72C9EAC2-F7D8-4877-8E24-87A2EE5D42BF

Property Address: _2644 Lake Tahoe Boulevard, South Lake Tahoe, CA 90150_      Date: _10/23/2021_

    (6) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 19.
    (7) Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.
    (8) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

  C. ITEMS EXCLUDED FROM SALE: _____

  D. OTHER ITEMS: Existing integrated phone and home automation systems, including necessary components such as intranet and internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.
9. SECURITY DEPOSITS: Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the California Civil Code.
10. CLOSING AND POSSESSION:
  A. Buyer intends (or ☒ does not intend) to occupy any unit in the Property as Buyer's primary residence.
  B. Seller-occupied or vacant property: Possession shall be delivered to Buyer: (i) ☐ at 6 PM or (_____ ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than _____ calendar days after Close Of Escrow; or (iii) ☐ at _____ ☐ AM/ ☐ PM on _____.
  C. Seller Remaining In Possession After Close Of Escrow: If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
  D. Tenant occupied units: Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.
  E. At Close Of Escrow: (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale; and (ii) Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.
  F. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.
11. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:
  A. LEAD-BASED PAINT HAZARD DISCLOSURES:
    (1) Seller shall, within the time specified in paragraph 19, deliver to Buyer, if required by Law, Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"). If the Lead Disclosures are delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)
    (2) Buyer shall, within the time specified in paragraph 19, return a Signed Copy of the Lead Disclosure to Seller.
  B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 19, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; and (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.
  C. WITHHOLDING TAXES: Within the time specified in paragraph 19A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
  D. MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
  E. NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES: This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
  F. CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:
    (1) SELLER HAS: 7 (or _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).
    (2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or _____ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall

Buyer's Initials ( _____ ) ( _____ )      Seller's Initials ( _FB_ ) ( _____ )

RIPA REVISED 12/18 (PAGE 4 OF 12)

RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 4 OF 12)

DocuSign Envelope ID: C985C0D9-784E-44E6-885B-EE7524EBF316
DocuSign Envelope ID: 72C9EAC2-F7D8-4877-8E24-87A2EE5D426F

Property Address: 2644 Lake Tahoe Boulevard, South Lake Tahoe, CA 96150                    Date: 10/23/2021

itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 19B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

G. WATER CONSERVING PLUMBING DEVICES: Section 1101.5 of the Civil Code, requires that by January 1, 2019, all multi-family residential and commercial real property be equipped with water-conserving plumbing devices. Seller shall disclose in writing whether the property includes any noncompliant plumbing fixtures. Seller may use C.A.R. Form SPQ or ESD. See C.A.R. form WCMD for further information

H. ELEVATED ELEMENTS: If the Property is part of a building with 3 or more dwelling units, Health and Safety Code Section 17973(m) requires that an inspection of any exterior elevated elements (such as, but not limited to, balconies, decks, stairways and walkways) be completed by January 1, 2025 and every 6 years thereafter. Seller shall, within the time specified in paragraph 19, provide to Buyer (1) a copy of the inspection and accompanying report and, if any corrective work is required, proof that corrective work has been completed in accordance with code and permit requirements, or (2) a statement (i) that no such inspection has been made, or (ii) if made, that no corrective work has been completed in accordance with the Health and Safety Code.

12. RESIDENTIAL 1-4 PROPERTIES:
   A. Seller shall, within the time specified in paragraph 19A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).
   B. Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.
   C. Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.
   D. Within the time specified in paragraph 19A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, within the time specified in paragraph 19A, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ) (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with a Exempt Seller Disclosure (C.A.R. Form ESD).
   E. Buyer shall, within the time specified in paragraph 19B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.
   F. In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering these items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.
   G. If any disclosure or notice specified in paragraph 12A, or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

13. SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE: Within the time specified in paragraph 19, Seller shall disclose, make available or Deliver, as applicable, to Buyer the following information.
   A. RENTAL/SERVICE AGREEMENTS: Seller shall make available to Buyer for inspection and review: (i) all current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; (ii) a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any rebate, concession, or other benefit, except as set forth in these documents. Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business.
   B. INCOME AND EXPENSE STATEMENTS: Seller shall make available to Buyer the books and records for the Property, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.
   C. ☐ TENANT ESTOPPEL CERTIFICATES: (If checked) Seller shall Deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.
   D. SURVEY, PLANS, AND ENGINEERING DOCUMENTS: Seller shall, at no cost to Buyer, Deliver to Buyer Copies of surveys, plans, specifications, and engineering documents, if any, prepared on Seller's behalf or in Seller's possession.
   E. PERMITS: If in Seller's possession, Seller shall Deliver to Buyer Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.
   F. STRUCTURAL MODIFICATIONS: Seller shall disclose to Buyer in writing any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.
   G. SELLER REPRESENTATION: Seller represents that Seller has no actual knowledge: (i) of any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property or the right to use and occupy it; (ii) of any unsatisfied mechanic's or materialman lien(s) affecting the Property; and (iii) that any tenant of the Property is the subject of a bankruptcy. If Seller receives any such notice prior to Close Of Escrow, Seller shall immediately notify Buyer.

Buyer's Initials ( _JDGMB_ )                                                  Seller's Initials ( _FB_ )( X _____ )

RIPA REVISED 12/10 (PAGE 5 OF 12)

RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 5 OF 12)



DocuSign Envelope ID: C985C0D9-7B4E-44E6-8B5B-EE7624EBF316
DocuSign Envelope ID: 72C9EAC2-F7D8-4677-8E24-67A2EE5D428F

**H. GOVERNMENTAL COMPLIANCE:**

(1) Seller shall disclose to Buyer any improvements, additions, alterations, or repairs to the Property made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.

(2) Seller shall disclose to Buyer if Seller has actual knowledge of any notice of violations of Law filed or issued against the Property.

**14. SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly Deliver a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

**15. CHANGES DURING ESCROW:**

A. Prior to Close Of Escrow, Seller may engage in the following acts ("Proposed Changes"), subject to Buyer's rights in paragraph 16B: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.

B. (1) At least 7 (or ____) Days Prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of such Proposed Changes.

(2) Within 5 (or ____) Days After receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes in which case Seller shall not make the Proposed Changes.

**16. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

A. Seller shall, within the time specified in paragraph 19A; (i) DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, (ii) disclose the number of units on the Property which have been legally approved, if known by Seller and (iii) make any and all other disclosures required by Law.

B. Buyer has the right to conduct Buyer Investigations of the property and, as specified in paragraph 19B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

**17. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 19B. Within the time specified in paragraph 19B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; (v) review and seek approval of leases that may need to be assumed by Buyer; and (vi) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations except for minimally invasive testing required to prepare a Pest Control Report; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 19B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's investigations and through the date possession is made available to Buyer.

D. Buyer indemnity and seller protection for entry upon property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**18. TITLE AND VESTING:**

A. Within the time specified in paragraph 19, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 19B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

Buyer's Initials ( _JVGMM_ )( _____ )     Seller's Initials ( _FB_ )( _____ )

Property Address: _2044 Lake Tahoe Boulevard, South Lake Tahoe, CA 96150_                    Date: _10/23/2021_

C. Within the time specified in paragraph 19A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a Standard Coverage Owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

19. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. SELLER HAS: 7 (or ___ ) Days After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5A, 6, 7, 8B(4), 11A, B, C, F, and G, 12A and D, 13, 16A, and 18A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

B. (1) BUYER HAS: 17 (or _45_ ) Days After Acceptance, unless otherwise agreed in writing, to:
   (i) complete all Buyer investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(4) and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 12A.
   (2) Within the time specified in paragraph 18B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
   (3) By the end of the time specified in paragraph 18B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 19A, then Buyer has 5 (or ___ ) Days After Delivery of any such items, or the time specified in paragraph 18B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
   (4) Continuation of Contingency: Even after the end of the time specified in paragraph 18B(1) and before Seller cancels, if at all, pursuant to paragraph 19C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 19C(1).

C. SELLER RIGHT TO CANCEL:
   (1) Seller right to Cancel; Buyer Contingencies: If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   (2) Seller right to Cancel; Buyer Contract Obligations: Seller, after first delivering to the Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B4; (vi) Return Statutory and Lead Disclosures as required by paragraph 11A(2) and 12E; or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 30B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 28. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

D. NOTICE TO BUYER OR SELLER TO PERFORM: The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or ___ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 19.

E. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES: If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

F. CLOSE OF ESCROW: Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or ___ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

G. EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's

Buyer's Initials ( _JDGMQ_ )                          Seller's Initials ( _FB_ X _____ )

RIPA REVISED 12/18 (PAGE 7 OF 12)

RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 7 OF 12)

DocuSign Envelope ID: C985C0D9-7B4E-44E6-8B5B-EE7524E8F316

DocuSign Envelope ID: 72C9BAC2-F7D8-4877-8E24-87A2EE5D42BF

Property Address: 2644 Lake Tahoe Boulevard, South Lake Tahoe, CA 04150                    Date: 10/23/2021

notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation Instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

20. REPAIRS: Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

21. ENVIRONMENTAL HAZARD CONSULTATION: Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

22. AMERICANS WITH DISABILITIES ACT: The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodation. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

23. FINAL VERIFICATION OF CONDITION: Buyer shall have the right to make a final verification of the Property within 5 (or ___ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 16; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

24. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS: Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

25. SUCCESSORS AND ASSIGNS: This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

26. COPIES: Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

27. BROKERS:
   A. COMPENSATION: Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   B. SCOPE OF DUTY: Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.
   C. BROKERAGE: Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against

Buyer's Initials ( JDGdd )                                        Seller's Initials ( FB )( )
RIPA REVISED 12/16 (PAGE 8 OF 12)

RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 8 OF 12)

DocuSign Envelope ID: C985C0D9-7B4E-44E8-8B5B-EE7524E3F316

DocuSign Envelope ID: 72C9EAC2-F7D8-4877-8E24-57A2EE6D42BF

any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

28. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 40 or 41 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

29. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 9, 11C, 1D, 19G, 24, 27A, 28, 29, 35, 38, 39, 40, 41 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 27A, or paragraph D of the section titled Real Estate Brokers on page 11 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 11 or elsewhere in the Agreement.

B. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or _____). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 11C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 27A and paragraph D of the section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 27A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days After mutual execution of the amendment.

30. **REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 19G, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials  *DGM*          Seller's Initials *FB* / _____

31. **DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 31C.

Buyer's initials ( *DGM* )          Seller's Initials ( *FB* )( _____ )

RIPA REVISED 12/19 (PAGE 9 OF 12)

DocuSign Envelope ID: C985C0D9-7B4E-44E6-8B5B-8E7524EBF316

DocuSign Envelope ID: 72C8EAC2-F7D8-4877-8E24-87A2EE5D420F

Property Address: 2644 Lake Tahoe Boulevard, South Lake Tahoe, CA 96150                Date: 10/22/2021

### B. ARBITRATION OF DISPUTES:

The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 31C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials  [DGM]                    Seller's Initials [FB] /

### C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

(2) PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

(3) BROKERS: Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

32. SELECTION OF SERVICE PROVIDERS: Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

33. MULTIPLE LISTING SERVICE ("MLS"): Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

34. ATTORNEY FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 31A.

35. ASSIGNMENT: Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller (C.A.R. Form AOAA).

36. EQUAL HOUSING OPPORTUNITY: The Property is sold in compliance with federal, state and local anti-discrimination Laws.

37. TERMS AND CONDITIONS OF OFFER:

This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

38. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES: Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

39. DEFINITIONS: As used in this Agreement:

A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

Buyer's Initials ( [DGM] )                              Seller's Initials ( [FB] X )

DocuSign Envelope ID: C985C0D9-7B4E-44E6-8B5B-EE7524EBF316
DocuSign Envelope ID: 72C8EAC2-F7D8-4877-8E24-67A2EE5D420F

Property Address: *2644 Lake Tahoe Boulevard, South Lake Tahoe, CA 96150*                               Date: *10/23/2021*

B. "Agreement" means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

C. "C.A.R. Form" means the most current version of the specific form referenced or another comparable form agreed to by the parties.

D. "Close Of Escrow" or "COE" means the date the grant deed, or other evidence of transfer of title, is recorded.

E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.

F. "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

I. "Deliver", "Delivered" or "Delivery", unless otherwise specified in writing, means and shall be effective upon personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 11, regardless of the method used (i.e., messenger, mail, email, fax, other).

J. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

K. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

M. "Signed" means either a handwritten or electronic signature on an original document. Copy or any counterpart.

40. EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by *Oliver Thornton*
who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by **5:00** [ ] AM/ [ ] PM, on *10/20/2021* _____ (date)).

[ ] One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date 10/27/2021 BUYER   *Jacob De Goldih and/or Assignee*
(Print name) *Jacob De Goldih and/or Assignee*

Date _____ BUYER _____
(Print name) _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

41. ACCEPTANCE OF OFFER: Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

[X] (if checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED: *10-28-21*

[ ] One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional tems.

Date 10/28/2021 SELLER   *Elena Batman*
                       —D1D1653263A3A6F...
(Print name)

Date _____ SELLER _____
(Print name) _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

( __/__ )   (Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was
(Initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____ [ ] AM/ [ ] PM.
A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.



South Lake Tahoe, CA

DocuSign Envelope ID: C985C0D9-7B4E-44E8-8B5B-EE7624EBF316

DocuSign Envelope ID: 72C9EAC2-F7D9-4877-8E24-67A2EE6D42BF

**REAL ESTATE BROKERS:**

A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

B. Agency relationships are confirmed as stated in paragraph 2.

C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.

D. COOPERATING (BUYER'S) BROKER COMPENSATION: Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

E. PRESENTATION OF OFFER: Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm _Hollywood Estates_

| | | | |
|---|---|---|---|
| By _Oliver Thornton_ | Oliver Thornton | DRE Lic. # 01089327 | DRE Lic. #02014153 |
| By _7837072000054T..._ | Kyle Darcy | DRE Lic. # 01917039 | Date 10/27/2021 |
| Address 550 4th street | | City San Francisco | Date |
| Telephone 3107041784 | Fax | E-mail oliver@hollywoodestates.com | State CA   Zip 94107 |

Seller's Brokerage Firm _Coldwell Banker_

| | | | |
|---|---|---|---|
| By | Joseph Riffel | DRE Lic. # 01100319 | DRE Lic. # 01331844 |
| By | | DRE Lic. # | Date 10-28-21 |
| Address _2196 Lake Tahoe Bivd_ | | City Scott, Lake Tahoe | Date |
| Telephone 530 542 5555   Fax 530 542 2803 | | E-mail _happytahoe.coldwell.ucus_ | CA   Zip 96150 |

---

**ESCROW HOLDER ACKNOWLEDGMENT:**

Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ) counter offer numbers _____ , ☐ Seller's Statement of Information and _____ , and agrees to act as Escrow Holder subject to paragraph 29 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

| | |
|---|---|
| Escrow Holder _____ | |
| By _____ | Escrow # _____ |
| Address _____ | Date _____ |
| Phone/Fax/E-mail _____ | |

Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

---

| PRESENTATION OF OFFER: ( _____ ) Seller's Broker presented this offer to Seller on _____ (date). |
|---|
| Broker or Designee Initials |

| REJECTION OF OFFER: ( X _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date). |
|---|
| Seller's Initials |

©2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( _____ )(  )

Seller's Initials ( FB )( _____ )

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REAL TORS®
525 South Virgil Avenue, Los Angeles, California 90020

RIPA REVISED 12/18 (PAGE 12 OF 12)

RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 12 OF 12)

DocuSign Envelope ID: C985C0D9-7B4E-44E6-8B5B-EE7524EBF316



Assemble
Capital

October 21, 2021

Ginger Mountain, LLC:

Re:     Letter of Intent to Purchase 2644 lake Tahoe blvd, South Lake Tahoe

Ginger Mountain, LLC:

Assemble Capital, LLC, a Delaware limited liability company, on behalf of an entity or entities to be formed ("Buyer") is pleased to submit for immediate review this Non-Binding Letter of Intent ("LOI") to Purchase certain property located at 2644 lake Tahoe, South Lake Tahoe 96150 ("Property

This LOI in no way should be construed as a binding agreement for either party or any third parties and is intended solely to express the intent of Buyer to engage in good faith negotiations to acquire the Property. All terms and conditions set forth herein are subject to, and shall become binding only upon, final approval and full execution of Purchase and Sale Agreement between Buyer and Seller ("PSA"). Notwithstanding the foregoing, the provisions entitled "Confidentiality" and "Exclusivity" are fully binding and enforceable against Buyer and Seller and will, unless otherwise expressly provided in this LOI, survive its termination.

Thank you for your time and consideration.

Sincerely,

Jacob De Golish
As authorized agent of Buyer

DocuSign Envelope ID: C98SC0D9-7B4E-44E6-8B5B-EE7624EBF316



| | |
|---|---|
| **Seller:** | Ginger Mountain, LLC |
| **Buyer:** | Assemble Capital and/or its permitted assigns |
| **Location:** | 2644 Lake Tahoe Blvd, South Lake Tahoe 96150 |
| **Building:** | Approximately 5886 Square Feet |
| **Purchase Price:** | $2,210,000 |

**Earnest Money:** Buyer shall deposit with Title Company of Buyer's Choice ("Title Company") an earnest money deposit in the amount of $21,125 or 1% of the Purchase Price, whichever is less, within five business (5) days of mutual execution of PSA, which shall be fully refundable to Buyer, plus interest (if applicable), during the Due Diligence period and Due Diligence Extension Period, in the event of a Seller default, failure of a condition precedent, or as otherwise provided in the PSA. Title Company will issue the Title Policy to Buyer for the Property at Closing without standard exceptions and insuring fee simple, marketable title to the Property subject only to those exceptions deemed acceptable to Buyer in accordance with the PSA. Seller shall be required to remove and discharge all monetary liens from the Property prior to closing.

**Acceptance Deadline:** Buyer requires acceptance of offer by no later than October 27th, 2021, or the Letter of Intent is void.

**Due Diligence:** Within five (5) days after mutual execution of agreement PSA, Seller shall deliver everything in its possession, custody or control which describes or reflects the physical or economic condition of the Property, to assist Buyer with its evaluation of the Property (the "Due Diligence Items"). This shall include, without limitation, the following items:

- A true, accurate, and complete rent roll and copies of all tenant leases or other occupancy agreements
- Existing title insurance policy or policies
- Existing surveys of the Property
- Documents pertaining to exceptions noted in the title policy of survey
- Budgeted operating expense information on the Property.
- Budgeted common area maintenance information on the Property.
- Current if any T-12 for the property.
- Construction Drawings and/or Tenant Finish as-builts for the Property.
- Current Construction cost and proformas for core and shell and TI.
- Any inspection reports related to the property
- Lien Waivers
- Vendor and Maintenance contracts servicing the Property, or any other service or management contacts impacting the Property.

DocuSign Envelope ID: C985C0D9-7B4E-44E6-8B5B-EE7524EBF316



Assemble
Capital

- Any agreements with City and County municipalities.
- Development plans and documents pertaining to engineering, architectural, and marketing reports.
- Environmental reports and studies.
- Documents related to applicable districts in which the Property is located.

Debt Contingency/New Loan Review – If Buyer is to pay all or part of the Purchase Price with a New Loan, this Contract is conditioned upon Buyer obtaining, in Buyer's sole discretion, a New Loan is satisfactory to Buyer in all respects.

Buyer will have sixty (45) days from (i) the execution of a PSA or (ii) the receipt of the last of the title commitment (with all exception documents), an updated survey, and the Due Diligence Items, whichever is later, to review the Due Diligence Items, object to the condition of title and/or survey, and conduct, at Buyer's own cost and expense, inspections, reports, tests (including environmental and zoning), and other evaluations and assessments of the Property as may be necessary in its sole discretion. During this period, Buyer shall have the opportunity to approve or disapprove the Property, secure financing, if necessary, and decide whether to proceed with closing, in Buyer's sole discretion. At any time during this period, Buyer may deliver written notice to Seller if Buyer decides not to proceed with closing and the deposit shall be promptly returned to Buyer.

**Due Diligence Extension:**   Buyer will have the right to receive a 30-Day Extension Period pertaining to the Due Diligence Period and Buyer's review of the condition and value of the property. To activate the Due Diligence Extension, Buyer or Buyer's Broker must notify Seller of such request and Buyer shall deposit an additional $20,000.00 to the Title Company within three (3) business days of its election. All Earnest Money shall be fully refundable to Buyer, plus interest (if applicable), during Due Diligence period and Due Diligence Extension Period, in the event of a Seller default, failure of a condition precedent, or as otherwise provided in the PSA. Title Company will issue the Title Policy to Buyer for the Property at Closing all as more particularly set forth in the PSA.

**Representations and Warranties:**   The PSA shall contain customary warranties and representations including, without limitation, representations and warranties to satisfy Buyer of the physical, financial and environmental condition of the Property, the condition of title, and Seller's ability to sell the Property as required under the PSA. Seller shall be required to continuously operate the Property in the ordinary course of business at all times prior to the Closing.

DocuSign Envelope ID: C985C0D9-7B4E-44E6-8B5B-EE7524EBF316



**Closing Date:** Closing date shall be thirty (30) days from expiration of the Due Diligence Period, as the same may be extended from time to time, and in no case earlier than the satisfaction or waiver of all conditions precedent. Seller shall deliver a General Warranty Deed to Buyer at closing subject only to the Permitted Exceptions (as defined in the PSA).

**Cost and Expenses:** Seller agrees to pay for transfer taxes with respect to the Property transfer, the cost of an ALTA Owner's Title Policy with extended coverage and such endorsements as Buyer shall desire, and one-half of the Title Company's closing fees. Buyer agrees to pay for all recording fees, the cost of a Lender's Policy of title insurance and any endorsements thereto required by its lender, all recording fees related to its loan documents (if applicable), and one-half of the Title Company's closing fees. Seller shall pay for all taxes, assessments, utility costs, and other costs or expenses incurred in relation to the ownership, management, operation, or maintenance of the Property accruing on or before the Closing Date. The parties shall prorate all income related to the Property as of the Closing Date.

**Assignability:** Buyer shall have the unfettered right to assign the PSA or its rights thereunder to any entity controlling, controlled by, or under common ownership or control with Buyer.

**Purchase and Sale Agreement:** Buyer will draft the purchase and sale agreement immediately following execution of this LOI.

**Brokers & Commissions:** Buyer is represented by Hollywood Estates on this Acquisition. Seller agrees to pay the commission.

**Confidentiality:** Prior to closing, Seller and Buyer will maintain the confidentiality of the negotiations regarding Buyer's purchase and acquisition of the Property, and will use their best efforts to prevent public disclosure or knowledge of such acquisition, without the prior approval of the other. The foregoing will not restrict or otherwise affect the right of Buyer or Seller to make or permit any disclosure: (i) to any affiliate of Buyer or Seller; (ii) to any prospective assignee or tenant of Buyer or any affiliate of such assignee or tenant; (iii) to consultants, legal advisors, financial institutions, business associates, investors and others provided such disclosure is not intended for broad dissemination to the public; (iv) to the extent such information shall be or have otherwise become publicly available other than as a result of a disclosure by Buyer or Seller; and (v) as may be required by law.

**Exclusivity:** As a material inducement to Buyer to proceed with its due diligence and preparation of the purchase and sale agreement (which activities Seller acknowledges will involve Buyer incurring significant expenditures), Seller hereby agrees with Buyer that until the earlier to occur of (i) the termination

DocuSign Envelope ID: C985C0D9-7B4E-44E6-8B5B-EE7624EBF316



of this letter of intent, or (ii) the date on which the parties enter into the purchase and sale agreement, Seller will deal exclusively and in confidence with Buyer in respect of the Property and will not enter into, negotiate, solicit or knowingly encourage or participate in any negotiations or discussions relating to any sale of the Property to any party other than Buyer.

**Disclaimer:**

Other than with respect to the Confidentiality and Exclusivity provisions stated above, Buyer and Seller will only be bound by a written PSA that is properly executed by both Buyer and Seller. No proposal, letter of intent, or oral statement will be construed as a binding contract to enter into a purchase/sale for either party.

Approved by:

**SELLER**

By: Flora Batoon          10/28/2021
Name: Ginger Mountain, LLC

**BUYER**

ASSEMBLE CAPITAL, LLC, on behalf of an entity or entities to be formed

By:
Name: Jacob De Golish
Its:   Authorized Agent



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**SELLER COUNTER OFFER No. 1**
May not be used as a multiple counter offer.
(C.A.R. Form SCO, Revised 11/14)

Date _October 28, 2021_

This is a counter offer to the: ☒ Purchase Agreement, ☐ Buyer Counter Offer No.___, or ☐ Other _____ ("Offer"),
dated _October 23, 2021_, on property known as _2644 Lake Tahoe Blvd., South Lake Tahoe, Ca. 96180_ ("Property"),
between _Assemble Capital LLC_ ("Buyer")
and _Ginger Mountain LLC_ ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.
   C. OTHER TERMS: _Referencing Letter of Intent to Purchase, dated 10-21-21:_

   _1. Earnest Money: Earnest money shall be in the amount of $22,100.00_

   _2. Acceptance date shall be no later than October 28, 2021._

   _3. Due Diligence: Within 7 days, Seller shall provide all documents referenced that seller has in their possession._

   _4. Due Diligence Extension: The extension terms are acceptable with the condition that the loan & appraisal_
   _contingencies are released at the time the extension is requested._

   _5. Costs and Expenses: With respect to any ALTA extended coverage and such endorsements as Buyer shall desire;_
   _Seller shall have the right to approve of any such extended coverage and endorsements._

   _6. Exclusivity: The seller shall have the right to secure backup Offers._

   D. The following attached addenda are incorporated into this Seller Counter offer: ☐ Addendum No. _____
   ☐ _____ ☐ _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 4 (if more than one signature then, the last signature date)(or by _8:00_ ☐ AM ☒ PM on _10/29/2021_ (date)) (i) it is signed in paragraph 5 by Buyer and (ii) a copy of the signed Seller Counter Offer is personally received by Seller or _Joseph Riffel_____, who is authorized to receive it.
   B. OR if Seller withdraws it anytime prior to Acceptance (CAR Form WOO may be used).
   C. OR if Seller accepts another offer prior to Buyer's Acceptance of this counter offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER:** SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Seller _Elora Bateon_ _Ginger Mountain LLC_ Date _10/28/2021_
   Seller _____ Date _____

5. **ACCEPTANCE:** I/WE accept the above Seller Counter Offer (If checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER)
   and acknowledge receipt of a copy.
   Buyer _____
   Buyer _____ _Assemble Capital LLC_ Date _10/28/21_ Time _11:17_ ☒ AM ☐ PM
   Date _____ Time _____ ☐ AM ☐ PM

   **CONFIRMATION OF ACCEPTANCE:**

   _____ ) (Initials) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by Seller, or Seller's authorized agent as specified in paragraph 2A on (date) _10-28-21_ at _11:28_ ☒ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not confirmed in this document.

© 2010, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

SCO Revised 11/14 (PAGE 1 OF 1)

**SELLER COUNTER OFFER (SCO PAGE 1 OF 1)**

Coldwell Banker McKinney 3106 Lake Tahoe Blvd. Ste. 1 South Lake Tahoe, CA 96150    Phone: (831)543-6521    Fax: (530)541-2043    PURCHASE SKY
Joseph Riffel    Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

DocuSign Envelope ID: 71951AC4-59A1-448F-A737-F84FC2E7843D
DocuSign Envelope ID: 329F505A-684F-48BE-B12F-FCF70FB44093



CALIFORNIA
ASSOCIATION
OF REALTORS®

**REQUEST FOR REPAIR No. 1**_____
(Or other Action)
(C.A.R. Form RR, Revised 12/21)

Date Prepared: 02/20/2022

In accordance with the terms and conditions of the Purchase Agreement, OR ☐Other_____

dated 2/20/2022 _____, on property known as 2044 Lake Tahoe Boulevard, South lake Tahoe, CA 96160 _____ ("Agreement"),
between Assemble Capital LLC _____ ("Buyer"),
and Ginger Mountain Lodge, LLC _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REQUEST** (Check all that apply): (Note: Seller has no obligation to respond to Buyer request.)
   A. ☐ Buyer requests that Seller, prior to final verification of condition, repair or take the other specified action for each item listed below or ☐ on the attached list dated _____;

   _____
   _____
   _____
   _____
   _____

   B. (i) ☐ SECTION 1: Buyer requests Seller pay to have Section 1 work completed as specified in the attached Pest Control Report dated _____ prepared by _____.
      (ii) ☐ SECTION 2: Buyer requests Seller pay to have Section 2 work completed as specified in the attached Pest Control Report dated _____ prepared by _____.
      (iii) If Buyer requests either Section 1 or Section 2 work above, Seller shall, no later than 5 (or _____) Days Prior to Close of Escrow, Deliver to Buyer a written pest control certification showing the corrective work has been completed.
   C. ☐ Buyer requests that Seller credit Buyer $ _____ at Close of Escrow.
      (Note: Any credit included in this paragraph is separate from and shall not reduce or supersede any other credit in the Agreement unless Otherwise Agreed. Credits need to be disclosed to Buyer's lender and total contractual credits may be limited pursuant to the Agreement. Total credit amount may not be enough to remedy all defects or repairs.)
   D. ☐ Buyer requests that Seller modify the purchase price. The revised purchase price shall be $ 1,600,000
2. Attached Reports: A copy of the following Inspection or other report is attached.
   ☒ Addendum for Request for Repair #2 _____ ☐ _____
   ☐ _____ ☐ _____
3. FHA or VA: Buyer's FHA or VA lender requires specified actions in the appraisal or other lender documentation (if checked, ☐ attached).
   A. Buyer's FHA or VA lender requires the following items to be repaired. Buyer requests that Seller repair the following items, and Seller (or ☐ Buyer) shall pay for any such repair _____
   _____
   _____
   _____
   D. Buyer requests that Seller pay for the following costs or expenses required by the FHA or VA lender: _____

4. If Seller agrees to all of Buyer's Requests, or some of Buyer's requests and Buyer accepts Seller's partial agreement below, Buyer agrees:
   A. (1) To remove the Investigation of Property Contingency (paragraph 3L(3) and 8C), ☐except the following _____
   OR (2) ☐ Buyer removes those contingencies identified on the attached, Signed, Contingency Removal Form (C.A.R. Form CR)
   B. Buyer Releases Seller from any loss, liability, expense, claim or cause of action regarding the disclosed condition of the Property ("Release").
5. EXPIRATION: Buyer proposes this Request for Repairs (RR) which shall be deemed revoked:
   A. Unless by 5:00 PM on the third day after it is signed by Buyer (or by _____ ☐ AM ☐ PM on _____ date) the proposed RR is signed by Seller and a Copy of this RR is Delivered to Buyer.
   B. If Buyer withdraws this Request for Repair any time prior to Seller's acceptance by communicating withdrawal to Seller or Seller's Agent.

© 2021, California Association of REALTORS®, Inc.

**RR REVISED 12/21 (PAGE 1 OF 2)**
Buyer and Seller, 3344 Loucks Avenue, Suite 201, Philadelphia, CA 19101
eSign Document

By _____ Date 2/21/2022 Item



REQUEST FOR REPAIR (RR PAGE 1 OF 2)

DocuSign Envelope ID: 71551AC4-59A1-448F-A737-F84FC2E7843D
DocuSign Envelope ID: 326F6B5A-B84F-480E-B12F-FCF70FB44803

6. **EFFECT OF BUYER REQUEST:** BUYER MAKES THIS RR ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS RR, ANY PREVIOUS RR OR SELLER RESPONSE AND BUYER REPLY TO REQUEST FOR REPAIR (C.A.R. Form RRRR) CAN NO LONGER BE ACCEPTED.

Buyer __Jacob De Golish and/or Assignee__ _____ Date 2/28/2022
Jacob De Golish and/or Assignee

Buyer _____ Date _____

---

**SELLER RESPONSE:** (check one)

Note to Seller: FHA/VA. If the Parties do not reach agreement on completing the repairs and other actions specified in paragraph 3A of the Buyer FHA or VA section of Buyer Requests, Buyer's FHA or VA lender will not loan Buyer the funds needed to purchase the Property. If that happens, and there is a finance contingency that has not been removed, Buyer may cancel this Agreement (C.A.R. Form CC).

1. ☐ Seller agrees to all of Buyer's Requests.

OR 2. ☐ Seller Partial Agreement. Seller agrees to all of Buyer's Requests except: _____
_____
_____

Seller's partial agreement to the RR may be withdrawn by Seller any time prior to Buyer's agreement in writing and shall be deemed revoked unless by 6:00PM on the third Day after it is signed by Seller (or by _____, ☐ AM/☐ PM on _____ date) AND it is re-signed by Buyer below and a copy of this RR is delivered to Seller.

OR 3. ☒ Seller responds to Buyer's request on the attached form (C.A.R. Form RRRR)

OR 4. ☐ Buyer's requests are not incorporated into the Agreement. Seller responds to Buyer's requests on the attached Amendment to Existing Agreement (C.A.R. Form AEA)

OR 5. ☐ Seller does NOT agree to any of Buyer's requests

**SELLER RESPONSE:** SELLER RESPONDS TO BUYER'S RR ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS SELLER RESPONSE, ANY PREVIOUS RR OR SELLER RESPONSE AND BUYER REPLY TO REQUEST FOR REPAIR (C.A.R. Form RRRR) CAN NO LONGER BE ACCEPTED.

Seller: __Flora Bateen__ Date 3/2/2022 Seller: _____ Date _____
D1E16031A20442...

---

**BUYER RESPONSE TO SELLER PARTIAL AGREEMENT:** (DO NOT sign until after Seller Responds above.)

☐ Buyer accepts Seller's partial agreement

OR ☐ Buyer does NOT accept Seller's partial agreement. Buyer withdraws Request for Repair No. _____, and makes a new request in the attached Request for Repair No. _____.

**BUYER RESPONSE:** BUYER RESPONDS TO SELLER'S PARTIAL AGREEMENT ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS BUYER RESPONSE, ANY PREVIOUS BUYER RESPONSE, SELLER REPLY, OR SELLER PARTIAL AGREEMENT CAN NO LONGER BE ACCEPTED.

Note to Buyer: FHA/VA. If the Parties do not reach agreement on completing the repairs and other actions specified in paragraph 3A in the FHA or VA section of Buyer Requests, and you have already removed or do remove your financing contingency, even though you may no longer be eligible for the FHA or VA loan specified in the Agreement and may not be able to get another loan to purchase the property, you could be in breach of the Agreement if you are otherwise unable to pay Seller the purchase price.

Buyer: _____ Date _____ Buyer: _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of a CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

RR REVISED 12/21 (PAGE 2 OF 2)

**REQUEST FOR REPAIR (RR PAGE 2 OF 2)**

DocuSign Envelope ID: 2357123E-B280-4638-A903-28AAD203D0B7



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM No.** _____1_____
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____
dated _2/20/2022_____, on property known as _2644 Lake Tahoe Boulevard, South Lake Tahoe, CA 98160_____,
_____("Property/Premises"),

In which _Assemble Capital LLC_____
and _Ginger Mountain Lodge, LLC_____ is referred to as ("Buyer/Tenant")
Buyer/Tenant and Seller/Landlord are referred to as the "Parties." is referred to as ("Seller/Landlord").

1.) Seller acknowledges that 2644 Lake Tahoe shall be delivered at least 60% vacant of tenants prior to the close of escrow.

2.) Seller acknowledges that the removal of the Buyers inspection contingency is conditional on this addendum being signed
alongside the Buyers Request for Repairs #1. Once this addendum AND the Request for Repairs #1 is signed by Buyer and Seller,
only then the Buyer will provide a Contingency Removal Form for the removal of inspection contingency.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this
Addendum.  — DocuSigned by:

Buyer/Tenant _Jacob De Golish and/or Assignee_____ Date _2/28/2022_
                    — E1F856DFBCB4654...  Jacob De Golish and/or Assignee

Buyer/Tenant _____ Date _____

Seller/Landlord _____ Date _____

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/21 (PAGE 1 OF 1)**

Hollywood Estates, 300 4A street, San Fransice, CA 91987
Oliver Thocacos                                    Phone: 20230/554        Fax:        2644 Lake Tahoe Boulevard

## ADDENDUM FOR REQUEST FOR REPAIR #1

Attached you will find our Request for Repair (RFR) #1 along with Addendum #1.

We are requesting a price reduction to $1,600,000 given the following discoveries that have been made on the property.

- The actual 2021 NOI is $54,000, which is drastically lower than the stated $117,000 at time of original offer
- Multiple tenants are not paying rent, or deferred on rent
- Many of the current bathroom configurations are not to Code and require correction to comply with code requirements.
- The Actual room/door count of the property is 19 rooms vs the 23 rooms
- Parking ratio less than the minimum of 1:1
- Various issues came up in the Buyers inspection along with deferred maintenance that needs to be corrected. Examples are the 100amp electrical panel, the well basin needs to be replaced, no BMP certification (needs to be corrected), roof and windows need to be replaced, and much more.

Please refer to the PDF's sent to Joe on 2/21/22 for more detailed information on the above stated facts.

Build Cost Estimate: 2644 Lake Tahoe Blvd
Units 22

VANHEE WOODWORKS
License #802151

2698 Lodge Pole Trail
South Lake Tahoe, CA 96150
Tel. 630-416-0313

| CONSTRUCTION | COST | PER UNIT |
|---|---|---|
| **1. PRE-DEVELOPMENT** | | |
| Permits, Architect & Engineering | $12,000.00 | |
| SUBTOTAL | $12,000.00 | $545 / unit |
| | | |
| **2. EXTERIOR - MAIN** | | |
| Dumpster Rental | $4,000.00 | |
| Exterior Repairs - Deferred Maintenance | $10,500.00 | |
| Aluminum Roof (Bldg 1-2) | $15,000.00 | |
| Flat Roof (Bldg 3) | $12,000.00 | |
| Well tanks or service back up | $15,000.00 | |
| Painting Exterior | $20,000.00 | |
| New Siding - Manager's Building | $7,500.00 | |
| New Fencing Perimeter | $25,000.00 | |
| New Windows | $25,000.00 | |
| Parking Lot Resurfacing | $13,000.00 | |
| Parking Lot Striping | $900.00 | |
| Parking Lot Lighting - Electrical | $4,500.00 | |
| SUBTOTAL | $176,400.00 | $8,018 / unit |
| | | |
| **3. EXTERIOR - SIDE LOT** | | |
| General Landscaping/Groundswork | $7,500.00 | |
| Built-In Firepits | $6,000.00 | |
| Deck (approx 10x20) | $3,000.00 | |
| Outdoor Lighting - Electrical | $3,000.00 | |
| Utility Hookups (for bar & events) | $6,000.00 | |
| SUBTOTAL | $24,500.00 | $1,114 / unit |
| | | |
| **4. GUEST ROOMS - CONSTRUCTION** | | |
| Demo | $500.00 | |
| Unit flooring | $1,500.00 | |
| HVAC mini split | $2,000.00 | |
| Electrical updated | $800.00 | |
| Light fixtures (allowance) | $850.00 | |
| Unit prep/paint | $900.00 | |
| Carpentry - built-in beds & storage | $6,000.00 | |
| Bathroom plumbing | $700.00 | |
| Shower glass | $600.00 | |
| Bathroom tile and labor (allowance) | $2,200.00 | |
| Bathroom vanity (allowance) | $400.00 | |
| Toilets | $200.00 | |
| Bathroom plumbing fixtures (allowance) | $600.00 | |
| Base moulding | $185.00 | |
| SUBTOTAL | $375,870.00 | $17,085 / unit |
| | | |
| **5. GARAGE / REC ROOM - CONSTRUCTION** | | |
| Demo | $2,000.00 | |
| Floors - Polished Concrete | $950.00 | |
| Paint | $1,200.00 | |
| Entry Doors | $1,000.00 | |
| Glass Garage Door | $5,000.00 | |
| Windows | $2,000.00 | |
| Electrical / Outlets | $1,000.00 | |
| Lighting | $1,000.00 | |
| ADA Bathroom Addition | $12,000.00 | |
| SUBTOTAL | $26,150.00 | |

Build Cost Estimate: 2644 Lake Tahoe Blvd
Units 22

VANHEE WOODWORKS
License #862151

2828 Lodge Pole Trail
South Lake Tahoe, CA 96160
Tel. 830-416-0313

| CONSTRUCTION | COST | PER UNIT |
|---|---|---|
| **6. MANAGER'S UNIT - CONSTRUCTION** | | |
| Demo | $1,000.00 | |
| Unit flooring | $3,000.00 | |
| HVAC mini split | $3,000.00 | |
| Electrical updated | $550.00 | |
| Light fixtures (allowance) | $1,200.00 | |
| Unit prep/paint | $1,800.00 | |
| Carpentry - built-in beds & storage | $3,500.00 | |
| Bathroom plumbing | $800.00 | |
| Shower glass | $600.00 | |
| Bathroom tile (allowance) | $2,200.00 | |
| Bathroom vanity (allowance) | $400.00 | |
| Toilets | $250.00 | |
| Bathroom plumbing fixtures (allowance) | $600.00 | |
| Base moulding | $400.00 | |
| Kitchen Cabinets | $3,500.00 | |
| Front door | $300.00 | |
| SUBTOTAL | $23,100.00 | |
| | | |
| | | |
| **7. MANAGER'S UNIT - FRONT LOBBY (220 sf)** | | |
| Demo | $600.00 | |
| New flooring - polished concrete | $800.00 | |
| Paint | $900.00 | |
| Electrical | $550.00 | |
| Built-in Bar | $2,500.00 | |
| New Fireplace | $3,000.00 | |
| Light Fixtures | $500.00 | |
| SUBTOTAL | $8,950.00 | |
| | | |
| **CONSTRUCTION TOTAL** | $646,970 | $29,408 / unit |
| Construction Contingency | $97,046 15% | |
| **FF&E TOTAL** | | / unit |
| FF&E Contingency | $0 15% | |
| **GRAND TOTAL** | $744,016 | $33,819 / unit |

DocuSign Envelope ID: FB15EE7E-8A5F-4A3E-9A55-DC421FB7129A



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM No. 2**
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____

dated ____October 23, 2021____, on property known as ____2014 Lake Tahoo Blvd.____
_____South Lake Tahoo, Ca. 96150_____ ("Property/Premises"),
in which _____Assemble Capital LLC_____ is referred to as ("Buyer/Tenant")
and _____Ginger Mountain LLC_____ is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

Referencing the Request for Repair No. 1, dated 2-20-22 and Addendum 1, dated 2-20-2, the Seller's response is as follow:

1. Purchase price to be: $1,050,000 (One Million, Eight Hundred and Fifty Thousand Dollars).

2. Buyer shall remove the Inspection Contingencies, within 2 days of execution of this Addendum.

3. The seller will cooperate with the buyer's efforts to vacate tenants for the buyer's planned remodel of the subject property, as set forth in the "Occupancy During And At Close of Escrow" document, attached.

4. Buyer shall have 60 days to remove the Loan Contingency. If the buyer can show good faith effort towards obtaining loan approval, the seller shall grant a reasonable extension of up to 30 days, with an additional deposit of $10,000.00 by buyer.

5. Close of Escrow to be within 5 business days after Buyer's removal of the Loan Contingency.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant _____/signature/_____ Date 3/10/2
                  Assemble Capital LLC

Buyer/Tenant _____ Date _____

Seller/Landlord _____Flora Bateen_____ Date 3/10/2022
                  Ginger Mountain LLC

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 00020

ADM REVISED 12/21 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

Coldwell Banker McKinney 2156 Lake Tahoe Blvd. Ste. 1 South Lake Tahoe, CA 96150          Phone: (305)541-8613          Fax: (530)541-1043          PURCHASE SKY
Joseph Bittel          Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite2200 Dallas TX 75201          www.lwolf.com

DocuSign Envelope ID: FB15EE7E-8A5F-4A3E-9A55-DC421FB7129A

## OCCUPANCY DURING AND AT CLOSE OF ESCROW

Referencing the purchase agreement, 10-23-21 between Ginger Mountain LLC (Seller) and Assemble Capital (Buyer) for the property identified as 2644 Lake Tahoe Blvd., the parties agree to follows:

1. The seller shall deliver the property with the following units vacant at close of escrow: Units: #2, #3, #4, #6 & #15-16.

2. An Eviction process shall begin within 2 days of execution of this agreement for the tenants in Units: #1, #5, #8, #12, & #13. The cost for said evictions shall be at the buyer's expense. Once these evictions are complete, said units shall be held vacant, by sellers until close of escrow

3. With the exception of the units identified in item 1, above, the status of the evictions associated with all the other units, shall not delay the close of escrow.

4. Seller agrees providing the lease/rental agreements, associated with the units identified in item 2, above, for the purpose of the evictions, with Ted Long (Attorney doing the evictions).

Buyer _____     Date 3/16/22
Assemble Capital by Jacob De Golish

Seller _____     Date 3/10/2022
Flora Batoon
Ginger Mountain LLC by Flora Batoon

DocuSign Envelope ID: C8C173CC-C45D-47A1-BCA1-351237B48158



CALIFORNIA
ASSOCIATION
OF REALTORS®

**CONTINGENCY REMOVAL No. 1**
(C.A.R. Form CR, Revised 12/21)

In accordance with the terms and conditions of the Purchase Agreement, OR ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R Form RRRR), ☐ Other _____

dated 3/11/2022 _____ , ("Agreement"),
on property known as 2044 Lake Tahoe Boulevard, South Lake Tahoe, CA 95150 _____ ("Property"),
between Assemble Capital LLC _____ ("Buyer")
and Ginger Mountain Lodge, LLC _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **BUYER REMOVAL OF BUYER CONTINGENCIES:** With respect to any contingency and cancellation right that Buyer removes, unless Otherwise Agreed in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer investigations and review of reports and other applicable information and disclosures; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense, if any, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. Buyer removes ONLY the following individually checked Buyer contingencies:
   A. ☐ Loan (Paragraph 3L(1) and 8A)
   B. ☐ Appraisal (Paragraph 3L(2) and 8B)
   C. Investigation of Property (Paragraph 3L(3), 8C, and 12)
      (1) ☒ Entire Buyer's Investigation Contingency (Paragraph 12)
   OR (2) ☐ Only the part of the investigation related to inspections concerning physical attributes of the Property (Paragraph 12B(1))
   OR (3) ☐ All Buyer investigations other than the physical attributes (Paragraph 12B(2) and (3))
   OR (4) ☐ Entire Buyer's Investigation Contingency, EXCEPT _____
   D. Review of Seller Documents:
      (1) ☐ Review of All Seller Documents (Paragraph 3L(4), 8D, 9B(6), 10A, and 11)
      (2) ☐ Review of All Seller Documents, EXCEPT ☐ Government Reports (Paragraph 10A); ☐ Statutory and other Disclosures (Paragraph 11); ☐ Other _____
   E. ☐ Preliminary ("Title") Report (Paragraph 3L(5), 8E, and 13)
   F. ☐ Common Interest (HOA or OA) Disclosures (Paragraph 3L(6), 8F and 11K(1))
   G. ☐ Review of leased or liened items (Paragraph 3L(7) and 8G)
   H. ☐ Sale of Buyer's Property (Paragraph 3L(8) and 8J)
   I. ☐ Other: _____
   J. ☐ Other: _____

3. ☐ **ALL Buyer contingencies are removed, EXCEPT:** ☐ Loan Contingency (Paragraph 3L(1) and 8A); ☐ Appraisal Contingency (Paragraph 3L(2) and 8B); ☐ Contingency for the Sale of Buyer's Property (Paragraph 3L(8) and 8G); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 3L(6), 8F and 11I(1)); ☐ Other _____

4. ☐ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

5. Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

NOTE: If this form is attached to a Request for Repairs (C.A.R. Form RR), Seller Response and Buyer Reply to Request for Repairs (C.A.R. Form RRRR), or another form or document such as an addendum (C.A.R. Form ADM) or Amendment to Existing Agreement (C.A.R. Form AEA) it is only valid if Buyer and Seller agree to the requests made on that form or document. (Paragraph numbers refer to C.A.R. Form RR or Applicable paragraph numbers may be different for different forms.)

Buyer _Jacob De Golish and/or Assignee_   Jacob De Golish and/or Assignee   Date 3/11/2022
Buyer ___61F8060F8C64454___   Date _____

6. **SELLER REMOVAL OF SELLER CONTINGENCIES:**

   NOTE: This section is solely for the purpose of removing Seller contingencies and should only be signed by Seller if they are removing Seller contingencies.

   Seller hereby removes the following Seller contingencies:

   ☐ Finding of replacement property (C.A.R. Form SPRP); ☐ Closing on replacement property (C.A.R. Form SPRP)
   ☐ Other _____

Seller _____   Date _____
Seller _____   Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CR REVISED 12/21 (PAGE 1 OF 1)**
Hollywood Estates, 388 0A street, San Francisco, CA 94108
Other Thereview

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

Phone: 3109361794   Fax:   2044 Lake Tahoe Boulevard

DocuSign Envelope ID: 87B45398-5910-42BA-9B57-76EACE20158F

CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM No. _Three_**
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☒ Other _Occupancy During and After Close of Escrow & Addendum No. 2_
dated _March 10, 2022_ , on property known as _2644 Lake Tahoe Blvd._

_South Lake Tahoe, Ca. 96150_ ("Property/Premises"),
in which _Assemble Capital LLC_ is referred to as ("Buyer/Tenant")
and _Ginger Mountain LLC_ is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."
Referencing Extension of Time Addendum:

1. On or before June 10, 2022 the buyer shall release from oscrow the amount of $ 30,000.00 to the seller. This release shall be non-refundable to the buyer. At close of escrow this release shall be credited towards the purchase price.

2. The sellor shall collect June & July rents for units: 4, 7, 9, 10, 14, 17-18, 21-22, 23 & unit 19-20 (if not vacated by the current tenants).

3. On June 15, 2022, the remaining tenants shall be given a 60-day notice to vacate. The buyer shall be responsible for any and all cost associated with the evictions of all the remaining tenants.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant _[signature]_ Date 5/17/2022
_Assemble Capital LLC_

Buyer/Tenant _____ Date _____

Seller/Landlord _Flora Batson_ Date 5/17/2022
_Ginger Mountain LLC_

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/21 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

DocuSign Envelope ID: 87B46398-5910-42BA-9B57-76EACE20158F



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**EXTENSION OF TIME ADDENDUM**
(C.A.R. Form ETA, Revised 4/06)

The following terms and conditions are hereby incorporated in and made a part of the: [ ] California Residential Purchase Agreement, [ ] Manufactured Home Purchase Agreement, [ ] Probate Purchase Agreement, [X] Residential Income Property Purchase Agreement, [ ] Vacant Land Purchase Agreement, [ ] Commercial Property Purchase Agreement, [ ] Business Purchase Agreement, [ ] other _____ ("Agreement"),

dated _____ *October 23, 2021* _____, on property known as *2644 Lake Tahoe Blvd., South Lake Tahoe, Ca.* *96150* ("Property"), in which _____ *Assemble Capital LLC* _____ is referred to as ("Buyer") and _____ *Ginger Mountain LLC* _____ is referred to as ("Seller").

**1. EXTENSION OF ESCROW:** The scheduled Close Of Escrow is extended to *September 10, 2022* (Date).

**2. EXTENSION OF CONTINGENCY(IES):** The following contingency(ies), if checked, is/are extended to _____ (Date) [ ] Buyer Investigation of Property Condition [ ] Loan [ ] Other _____

**3. OTHER EXTENSION(S):** The time for _____ is/are extended to _____ (Date).

**4. ADDITIONAL TERMS:** *See Addendum Three.*

By signing below, Buyer and Seller acknowledge that each has read, understands, and received a copy of and agrees to the terms of this Extension of Time Addendum.

Buyer _____ Date 5/17/2022
Assemble Capital LLC

Buyer _____ Date _____

Seller _____ Date 5/17/2022
*Flora Batoon*
Ginger Mountain LLC

Seller _____ Date _____

© 2004-2006, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC
a subsidiary of the California Association of REAL TORS®
525 South Virgil Avenue, Los Angeles, California 90020

ETA REVISED 4/06 (PAGE 1 OF 1)

**EXTENSION OF TIME ADDENDUM (ETA PAGE 1 OF 1)**

Coldwell Banker McKinney 2346 Lake Tahoe Blvd Ste. 1 South Lake Tahoe, CA 96150          Phone: (916) 342 1611          Fax: (530) 412-2933          PUBLISHED SKY
Joseph Billel                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas TX 75201   www.lwolf.com

DocuSign Envelope ID: 5AEABF2C-1B62-40E0-8B40-66FFCF7BDFE7



**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

**ADDENDUM No. _Four_**
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR [ ]Residential Lease or Month-to-Month Rental Agreement, [ ] Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), [ ] Other _____

dated _____ October 23, 2021 _____, on property known as _____ 2644 Lake Tahoe Blvd. _____
_____ South Lake Tahoe, Ca. 96150 _____ ("Property/Premises"),
in which _____ Assemble Capital LLC _____ is referred to as ("Buyer/Tenant")
and _____ Ginger Mountain LLC _____ is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

1. The seller will cooperate in the eviction process by allowing the transfer of the remaining tenant security deposits to the buyer, in the amount of $8,200.00 (Eight Thousand, Two Hundred Dollars) on or before Friday 8-05-22, for return to the tenants. During the walkthrough of the remaining occupied units, any damage discovered, beyond normal wear & tear and cleaning shall be accessed and an amount to repair said damage shall be agreed upon between buyer and seller. In the event that the buyer fails to close escrow, then said agreed amount for repairs, shall be due from buyer to seller.

2. The buyer shall pay the seller the amount of $5,824.00 (Five Thousand, Eight Hundred and Twenty Four Dollars) for rent due from July 13, 2002 to July 31, 2002, on or before Friday 8-05-22

3. The seller shall pay the cost to clear sewer line section that services units 11, 12 & 13 prior to close of escrow.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant _____ Date _8/3/2022_
_Assemble Capital LLC_

Buyer/Tenant _____ Date _____

Seller/Landlord _Flora Batoon_ _____ Date _8/3/2022_
_Ginger Mountain LLC_

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/21 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Coldwell Banker McKinney 2195 Lake Tahoe Blvd. Ste. 1 South Lake Tahoe, CA 96150     Phone (530) 541-8621     Fax (530) 541-2941     PURCHASE SKY
Joseph Hills                   Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas TX 75201   www.lwolf.com

## Rents Due for July

| UNITS | Tenants Rent due per Notice | Rent Paid July | July Rent | Tenant Deposits | |
|---|---|---|---|---|---|
| 1 | | Vacant | | | |
| 2 | | Vacant | | | |
| 3 | | Vacant | | | |
| 4 | $390 | $390 | $900 | $900 | |
| 5 | | Vacant | | | |
| 6 | | Managers | | | |
| 7 | $390 | $390 | $900 | $900 | |
| 8 | $411 | $0 | $950 | $950 | |
| 9 | $411 | $325 | $950 | $950 | *Vacant - Reimburse Ted Long $950 deposit* |
| 10 | $411 | $411 | $950 | $2,100 | |
| 11 | | Vacant | | | |
| 12 | | Vacant | | | |
| 13 | | Vacant | | | |
| 14 | | Vacant | | | |
| 15-16 | | Vacant | | | |
| 17-18 | $520 | $520 | $1,200 | $1,200 | |
| 19-20 | | Vacant | | | |
| 21-22 | $520 | $0 | $1,200 | $1,200 | |
| 23 | $455 | $240 | $1,050 | $0 | |
| Total | $3,508 | $2,276 | $8,100 | $8,200 | Due from Seller |
| | | | ($2,276) | | |
| | | | $5,824 | | Due from Buyer |

DocuSign Envelope ID: 129DD5BF-0862-4094-90A6-CBE03B004A58
DocuSign Envelope ID: C2AF8A6E-230F-4133-B5C7-51C0637F823E


CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM No. Five**
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____

dated _____ October 23, 2021 _____, on property known as _____ 2614 Lake Tahoe Blvd.
South Lake Tahoe, Ca. 96150 _____ ("Property/Premises"),
in which _____ Assemble Capital LLC _____ is referred to as ("Buyer/Tenant")
and _____ Ginger Mountain LLC _____ is referred to as ("Seller/Landlord").

Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

Referencing the Design Cost Agreement from Liberty Utilities (CalPeco Electric) LLC. The undersigned buyer "Assemble Capital LLC" shall be responsible for any and all costs associated with said Design Cost Agreement that the buyer has requested the seller "Ginger Mountain LLC" to execute.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant  _Jacob De Golish_                                      Date  9/9/2022
                Assemble Capital LLC

Buyer/Tenant  _____                           Date _____

Seller/Landlord  _Flora Bateen_                                      Date  9/9/2022
                Ginger Mountain LLC

Seller/Landlord  _____                        Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/21 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

Coldwell Banker McKinney 2195 Lake Tahoe Blvd. Ste. 1 South Lake Tahoe, CA 96150          Phone: (916) 919-9623      Fax: (916) 93-3000    FLORA BATEEN
Joseph Bifid                     Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas TX 75201   www.lwolf.com



| Date: | 9/16/2021 |
| Job Number: | TBD |
| Cost Code: | 99998-0000-0008-0000 |
| Project Title: | 2644 LTB - Comm – Ginger Mtn |

# Design Cost Agreement

Construction plans for the above referenced project have been submitted to Liberty Utilities (CalPeco Electric) LLC and require modifications to Liberty's electric distribution system. Such modifications and or extensions are referred to as the "Project" in this agreement. You have requested that Liberty prepare a final and binding design for the Project, which may include detailed plans, specifications, cost estimates and projected construction dates ("Design").

Any requests for changes or revisions to your project design after Liberty has provided one design and estimate based on the information you provided with your application will be charged as a non-refundable amount.

According to Rule No.15 for Electric Line Extensions as approved by the California Public Utilities Commission, Liberty may require the Applicant to advance the costs for Design preparation. Design costs for the Project are estimated at _____ $1,500.00 _____ .

Design costs will be included in the final Project cost estimate on the Extension Agreement. If the Extension Agreement is not executed within 90 days of issuance, you will be billed for all Design costs incurred, less any Design preparation fees advanced. Payment will be due 30 days from the invoice date.

By signing this letter where indicated below and returning it to Liberty, you are acknowledging your acceptance of these terms.

Sincerely,
Liberty Utilities (CalPeco Electric) LLC

By: _Andrew Gregorich_   _Andrew Cooy_

Title: _Planner_

I have reviewed this letter, agree to its terms and am fully authorized to sign.

| Date: | 9/9/2022 | Customer's Signature: | _Elena Batoon_ |
| Tax ID #: | | Customer's Name: | D10160338A2A48F<br>Ginger Mountain, LLC |
| | | Customer's Address: | 2644 Lake Tahoe Blvd |
| | | | South Lake Tahoe, CA 96150 |

12032021.v1

DocuSign Envelope ID: A46F60E3-2B3B-4325-82FE-2106C89C3718



CALIFORNIA
ASSOCIATION
OF REALTORS®

**EXTENSION OF TIME ADDENDUM**
(C.A.R. Form ETA, Revised 4/06)

The following terms and conditions are hereby incorporated in and made a part of the: ☐ California Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Probate Purchase Agreement, ☒ Residential Income Property Purchase Agreement, ☐ Vacant Land Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ Business Purchase Agreement, ☐ other _____
("Agreement"),
dated _____October 23, 2021_____, on property known as **2644 Lake Tahoe Blvd., South Lake Tahoe, Ca.**
**96150** ("Property"), in which
_____**Assemble Capital LLC**_____ is referred to as
("Buyer") and _____**Ginger Mountain L.L.C**_____
is referred to as ("Seller").

1. **EXTENSION OF ESCROW:** The scheduled Close Of Escrow is extended to **September 30, 2022** (Date).

2. **EXTENSION OF CONTINGENCY(IES):** The following contingency(ies), if checked, is/are extended to
_____ (Date) ☐ Buyer Investigation of Property Condition ☐ Loan ☐ Other
_____ .

3. **OTHER EXTENSION(S):** The time for _____
_____ is/are extended to _____ (Date).

4. **ADDITIONAL TERMS: See Addendum Six.** _____

By signing below, Buyer and Seller acknowledge that each has read, understands, and received a copy of and agrees to the terms of this Extension of Time Addendum.

Buyer _____*Jacob De Golish*_____ Date __9/14/2022__
ASSEMBLE CAPITAL LLC

Buyer _____ Date _____

Seller _____*Shane L Baton*_____ Date __04-14-2022__
Ginger Mountain LLC

Seller _____ Date _____

© 2004-2006, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ETA REVISED 4/06 (PAGE 1 OF 1)

**EXTENSION OF TIME ADDENDUM (ETA PAGE 1 OF 1)**

Coldwell Banker McKinney 2196 Lake Tahoe Blvd. Ste. 1 South Lake Tahoe, CA 96150    Phone: (530)810-6633    Fax: (530)542-3063    PURCHASE SKY
Joseph Bifhel                        Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas TX 75201   www.lwolf.com

DocuSign Envelope ID: A46F69E3-283D-4326-82FE-2196C6BC3718



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**ADDENDUM No. _SIX_**
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☒ Other _Extension of Time Addendum 2._

dated _____, on property known as _____ 2644 Lake Tahoe Blvd.
_____ South Lake Tahoe, Ca. 96150 _____ ("Property/Premises"),
in which _____ Assemble Capital LLC _____ is referred to as ("Buyer/Tenant")
and _____ Ginger Mountain LLC _____ is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

1. On or before September 16, 2022 the buyer shall release from escrow the amount of $20,000.00 (Twenty Thousand Dollars) to the seller. This release shall be non-refundable to the buyer. At close of escrow this amount shall be credited towards the purchase price.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant _____ Date _9/11/22_
_Assemble Capital LLC_

Buyer/Tenant _____ Date _____

Seller/Landlord _____ Ginna L. Brown _____ Date _09·14·2022_
_Ginger Mountain LLC_

Seller/Landlord _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/21 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

Coldwell Banker McKinney 2116 Lake Tahoe Blvd. Ste. 1 South Lake Tahoe, CA 96150     Phone (209)544-6111     Fax (530)543-2103     PURCHASE SKY
Joseph Biffal                                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St. Suite 2200, Dallas, TX 75201   www.lwolf.com

# "Exhibit 2"

P|F|S

THE FINE, FINFER & SCHUMACHER LTD.
ATTORNEYS AT LAW

Jordan A. Finfer
Tel. (312) 205-4462
jfinfer@pfs-law.com

Refer To: #9464-001

October 13, 2022

**Via Federal Express and Email**

Ginger Mountain Lodge, LLC
1681 Shortridge Ave.
San Jose, CA 95116

Richard B. Gullen, Esq.
1960 The Alameda, Suite 200
San Jose, CA 95126
rick@rhrc.net

Robert Huckaby
3330 Lake Tahoe Blvd., #10
South Lake Tahoe, CA 96150
bobhuckaby@aol.com

Flora Batoon
Eddie Batoon
2971 Mitton Dr.
San Jose, CA 95148

Julia C. Durward
Robert Durward
1681 Shortridge Ave.
San Jose, CA 95116

Joseph Riffel
Coldwell Banker
2196 Lake Tahoe Blvd.
South Lake Tahoe, CA 96150
happytahoe@hotmail.com

Lila Rohrich
1959 Lake Tahoe Blvd.
South Lake Tahoe, CA 96150
lrohrich@placertitle.com

> Re:  Purchase Agreement for 2644 Lake Tahoe Blvd., South Lake Tahoe, CA 96150
> (the "Agreement")

Dear Sirs and Madams:

I represent Jacob DeGolish ("**Buyer**") in regards to the above-referenced Agreement.

As you are aware, the Agreement was signed by Flora Batoon, purportedly on behalf of Ginger Mountain Lodge, LLC ("**Seller**"). In signing the Agreement, Ms. Batoon represented to Buyer that she had the appropriate authority to bind the Seller in this transaction. However, it has recently come to our attention that Ms. Batoon failed to obtain consent from Seller's members in the manner required by Seller's governing documents. Accordingly, Ms. Batoon had no authority to execute the Agreement, rendering it invalid. Cal. Corp. Code, §17703.03(a); *see also Saks v. Charity Mission Baptist Church* (2001) 90 Cal.App.4th 1116 [110 Cal.Rptr.2d 45], *as modified on denial*

200 South Wacker Drive · Suite 2700
Chicago, Illinois 60606
Tel. 312.551.8300  Fax. 312.551.1101

www.pfs-law.com

PFS:009464.0001.2986374.1

*of reh'g* (Aug. 21, 2001) (holding contract invalid where agent did not have authority to enter on behalf of principal). In other words, the Agreement between Buyer and Seller is null and void.

What's more, Ms. Batoon did not perpetrate this fraud alone. Seller's broker, the escrow officer, and even Seller itself (collectively the "Seller Parties") have known and concealed the fact that the Agreement was entered without authority, for their own personal gain. In reliance on this orchestrated fraud, Buyer has incurred $138,796.00 in costs (including the Earnest Money) —all in furtherance of an invalid agreement. A breakdown of Buyer's costs are enclosed for your reference.

In light of the above, Buyer cannot proceed with this transaction. Buyer has already devoted substantial time and money in reliance upon an unenforceable Agreement; to continue to do so without knowing whether Seller will agree to enter into a binding contract, or the terms of such contract, would be illogical. As such, Buyer must cease all efforts in furtherance of this transaction. Additionally, and in light of the misrepresentations made by Seller Parties, Buyer demands that the Seller Parties reimburse him the $138,796.00 in costs it has incurred to date. Should Seller fail to meet these demands, Buyer intends to commence litigation against all responsible parties to recover its damages.

Buyer reserves all rights, claims, and defenses in this regard. Further, the Seller Parties are directed to maintain and preserve all documents, emails, text messages and any other information they possess related to this matter in anticipation of future litigation.

Regards,

**PATZIK, FRANK & SAMOTNY LTD.**

Jordan A. Finfer

# Prepaid Cash Injection Worksheet

| | Amount | Date | Paid To | Paid from Account | For the Payment/Purchase of | Invoice Provided (Y or N) | Proof of Payment (Y or N) |
|---|---|---|---|---|---|---|---|
| Prepaid 1) | $1,600.00 | 6/15/2022 | Eviction Attorney - Ted Long | 4746 | Evictions | Yes | Yes |
| Prepaid 2) | $7,000.00 | 8/1/2022 | Eviction Attorney - Ted Long | 4746 | Evictions | Yes | Yes |
| Prepaid 3) | $5,880.00 | 8/5/2022 | Eviction Attorney - Ted Long | 4746 | Evictions | Yes | Yes |
| Prepaid 4) | $16,500.00 | 3/24/2022 | Celtic Bank | 1672 | Deposit | No | Yes |
| Prepaid 5) | $3,500.00 | 4/19/2022 | Architect - David Lopez | 1672 | Drawings - Architecture Fees | Yes | Yes |
| Prepaid 6) | $3,000.00 | 5/20/2022 | Architect - David Lopez | 4746 | Drawings - Architecture Fees | Yes | Yes |
| Prepaid 7) | $3,500.00 | 6/14/2022 | Architect - David Lopez | 4746 | Drawings - Architecture Fees | Yes | Yes |
| Prepaid 8) | $1,600.00 | 8/10/2022 | Architect - David Lopez | 4746 | Drawings - Architecture Fees | Yes | Yes |
| Prepaid 9) | $3,500.00 | 8/16/2022 | Architect - David Lopez | 4746 | Drawings - Architecture Fees | Yes | Yes |
| Prepaid 10) | $1,400.00 | pending | Architect - David Lopez | | Drawings - Architecture Fees | Yes | |
| Prepaid 11) | $2,616.00 | 7/27/2022 | Building and Safety | 009 Amex | Permits - Deposit | Yes | Yes |
| Prepaid 12) | $2,150.00 | 11/15/2021 | INN-SPEC | 009 Amex | Building Inspections | Yes | Yes |
| Prepaid 13) | $2,900.00 | 11/24/2021 | Kevin Stover | 4746 | Renderings - Architecture Fees | Yes | Yes |
| Prepaid 14) | $1,250.00 | 5/4/2022 | Kevin Stover | Venmo | Renderings - Architecture Fees | Yes | Yes |
| Prepaid 15) | $22,100.00 | 11/1/2021 | Ginger Mountain LLC - Escrow | 1672 | Non Refundable Deposit | No | Yes |
| Prepaid 16) | $10,000.00 | 5/9/2022 | Ginger Mountain LLC - Escrow | 4746 | Non Refundable Deposit - Extension | No | Yes |
| Prepaid 17) | $800.00 | 11/10/2021 | Bruce MacKay | 009 Amex | Well Inspection & Water Test | Yes | Yes |
| Prepaid 18) | $3,500.00 | 8/18/2022 | Architect - David Lopez | 4746 | Drawings - Architecture Fees | Yes | Yes |
| Prepaid 19) | $1,500.00 | 9/12/2022 | Liberty Utilities | 4746 | Liberty Utilities Deposit - Upgrade Service | Yes | Yes |
| Prepaid 20) | $12,500.00 | 4/11/2022 | 2624 Lake Tahoe Blvd | 4746 | urchase Option - Adjacent commercial property | | Yes |
| Prepaid 21) | $35,000.00 | 10/1/2022 | Attorney - PFS Law | 4746 | Attorney Fees - LLC Docs & Contracts | Yes | Yes |
| | | | | | | | |
| TOTAL | $141,796.00 | | | | | | |

EDDIE & FLORA BATOON                                    CASE NO. 23-50592

# EXHIBIT 2

1   Robert P. Huckaby, CA Bar #097633
    3330 Lake Tahoe Blvd. #10
2   South Lake Tahoe, CA  96150
    (530) 544-4697
3   Fax (530) 544-7760

4

5   ATTORNEY FOR DEFENDANT,
    FLORA BATOON
6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF EL DORADO, SOUTH LAKE TAHOE SESSION

10

11  JACOB DEGOLISH, d/b/a                    )   CASE NO. 22CV1845
    ASSEMBLE CAPITAL LLC,                    )
12                                           )   NOTICE OF AND DEMURRER BY
                        Plaintiff,           )   DEFENDANT FLORA BATOON
13  vs.                                      )   TO PLAINTIFF'S COMPLAINT,
                                             )   MEMORANDUM OF POINTS AND
14  PLACER TITLE COMPANY,                    )   AUTHORITIES, DECLARATION
    COLDWELL BANKER LLC,                     )   OF ROBERT HUCKABY
15  FLORA BATOON, and                        )
    JOSEPH RIFFEL,                           )   Date:  April 14, 2023
16                                           )   Time:  1:30 p.m.
                        Defendants.          )   Dept:  4
17  _____   )   Trial Date:  none set

18                                    ORAL ARGUMENT REQUESTED

19          TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

20          PLEASE TAKE NOTICE that on April 14, 2023 at 1:30 p.m. in Department 4 of the

21  above-entitled court, located at 1354 Johnson Blvd., South Lake Tahoe, California, defendant

22  FLORA BATOON will, and does hereby, move the Court for an Order sustaining the Demurrer

23  to Plaintiff JACOB DEGOLISH's Complaint for Fraud and Fraudulent Concealment filed

24  herein.

25          The Demurrer is based upon the Statement of Demurrer and the Memorandum of Points

26  and Authorities attached to this Notice, together with all pleadings, records and files herein and

27  such further evidence as may be presented at the hearing on this Demurrer.

28          The attached Declaration of Robert P. Huckaby substantiates compliance of the moving

                            Demurrer to the Complaint, page 1

1    party with CCP §430.41 requiring meet and confer prior to filing this Demurrer.

2         Pursuant to Local Rule 7.10.05(A), the court will issue a tentative ruling for this matter
3    on the court day before the hearing. The complete text of the tentative ruling will be available
4    beginning at 2:00 p.m. at the court's web site, www.eldoradocourt.org. The tentative ruling
5    providing the disposition of the matter only, without the rationale, can be obtained by calling
6    (530) 573-3042 (South Lake Tahoe Branch) beginning at 2:00 p.m. on the court day before the
7    hearing. The tentative ruling shall become the final ruling on the matter and no hearing will be
8    held unless oral argument is timely requested or the tentative ruling indicates otherwise.
9    Requests for oral argument must be made either through the court's web site or by calling (530)
10   573-3042 no later than 4:00 p.m. on the court day before the hearing.

11   Dated: March 14, 2023

12                                          _____
                                            Robert P. Huckaby,
13                                          Attorney for Defendant,
                                            Flora Batoon
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STATEMENT OF DEMURRER

Defendant FLORA BATOON demurs to the Complaint by Plaintiff JACOB DEGOLISH for Fraud and Fraudulent Concealment.

## DEMURRER TO THE ENTIRE COMPLAINT

1.  Defendant demurs to the entire Complaint under California Code of Civil Procedure §430.10(e), on the grounds that the Complaint fails to state facts sufficient to constitute a cause of action against any answering defendant. Plaintiff is not a party to the contract being sued under and is not a real party in interest to bring this action.

2.  Defendant demurs to the entire Complaint under California Code of Civil Procedure §430.10(f), on the grounds that the Complaint is uncertain. Neither plaintiff nor any named defendant are parties to the contract being sued under, and plaintiff has otherwise failed to identify any duty the breach of which caused his alleged damages.

3.  Defendant demurs to the entire Complaint on the grounds that the contract being sued under required the parties to participate in mediation and arbitration prior to bringing legal action, which plaintiff failed to do even though defendant agreed to participate in mediation and agreed to a selected mediator with plaintiff's counsel.

## DEMURRER TO THE FIRST CAUSE OF ACTION

4.  Defendant demurs to the First Cause of Action under California Code of Civil Procedure §430.10(e), on the grounds that the Complaint fails to state facts sufficient to constitute a cause of action against this answering defendant. Plaintiff is not a party to the contract being sued under and is not a real party in interest to bring this action.

5.  Defendant demurs to the First Cause of Action under California Code of Civil Procedure §430.10(f), on the grounds that the Complaint is uncertain. Neither plaintiff nor any named defendant are parties to the contract being sued under, and plaintiff has otherwise failed to identify any duty the breach of which caused his alleged damages.

6.  Plaintiff has failed to state any contractual relationship which would support the type and amount of damages that were allegedly caused by each defendant. Neither plaintiff nor any named defendant are parties to the contract being sued under, and plaintiff has otherwise

1   failed to identify any duty the breach of which caused his alleged damages.

2       7.     Plaintiff has failed to state specific elements of offer, acceptance, consideration
3 and performance to support its allegation a contract or duty existed between the parties the
4 breach of which was the cause of his alleged damages.

5   DEMURRER TO THE SECOND CAUSE OF ACTION

6       8.     Defendant demurs to the Second Cause of Action under California Code of Civil
7 Procedure §430.10(e), on the grounds that the Complaint fails to state facts sufficient to
8 constitute a cause of action against this answering defendant. Plaintiff is not a party to the
9 contract being sued under and is not a real party in interest to bring this action.

10      9.     Defendant demurs to the Second Cause of Action under California Code of Civil
11 Procedure §430.10(f), on the grounds that the Complaint is uncertain. Neither plaintiff nor any
12 named defendant are parties to the contract being sued under, and plaintiff has otherwise failed to
13 identify any duty the breach of which caused his alleged damages.

14      10.     Plaintiff has failed to state the amount of damages that were actually caused by
15 what alleged act or failure to act by each defendant. Neither plaintiff nor any named defendant
16 are parties to the contract being sued under, and plaintiff has otherwise failed to identify any duty
17 the breach of which caused his alleged damages.

18   DEMURRER TO THE THIRD CAUSE OF ACTION

19      11.     Defendant demurs to the Third Cause of Action under California Code of Civil
20 Procedure §430.10(e), on the grounds that the Complaint fails to state facts sufficient to
21 constitute a cause of action against this answering defendant. Plaintiff is not a party to the
22 contract being sued under and is not a real party in interest to bring this action.

23      12.     Defendant demurs to the Third Cause of Action under California Code of Civil
24 Procedure §430.10(f), on the grounds that the Complaint is uncertain. Neither plaintiff nor any
25 named defendant are parties to the contract being sued under, and plaintiff has otherwise failed to
26 identify any duty the breach of which caused his alleged damages.

27      13.     Plaintiff has failed to state the amount of damages that were actually caused by
28 what alleged act or failure to act by each defendant. Neither plaintiff nor any named defendant

1 | are parties to the contract being sued under, and plaintiff has otherwise failed to identify any duty
2 | the breach of which caused his alleged damages.

3 |      WHEREFORE, defendant prays the Court:

4 |      A.     That defendant's demurrers be sustained, without leave to amend due to plaintiff's
5 | failure to be a real party in interest and failure to comply with the contractual prerequisite for
6 | mediation and arbitration, and

7 |      B.     For such other and further relief as the Court deems just and proper.

8 | Dated: March 14, 2023

Robert P. Huckaby,
Attorney for Defendant,
Flora Batoon

Demurrer to the Complaint, page 5

1.      A demurrer is appropriate to challenge defects which appear, as here, on the face of the pleadings (CCP §430.30; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58).

2.      The purpose of a complaint is to furnish defendants with certain and definite charges which can be intelligently met and defended against (*Lavine v. Jessup* (1958) 161 Cal.App.2d 59, 326 P.2d 238).   More general assertions by way of conclusions or those indefinite in character, such as are presented by the Complaint herein, cannot be deemed sufficient to comply with long-established rules of pleading (*Id.* 326 P.2d at 246).   Such generalizations are "neither good pleadings nor [are they] what the opposing parties have a right to expect." (*Id.* at 243). A cause of action is not created by the mere use of legal, generic or other terms, but instead the complaint must include, with respect to all causes of action, definite statements of actionable facts.  The blending of indefinite charges and unsupported conclusions fails to state a cause or causes of action (*Id.* at 247).

3.      Further, the complaint is required to contain "*A statement of the facts constituting the cause of action, in ordinary and concise language.*"  (CCP §425.10(a)(1))

4.      The contract being sued under as establishing a duty between the parties was between ASSEMBLE CAPITAL LLC, as buyer, and GINGER MOUNTAIN (LODGE) LLC, as seller. Jacob DeGolish signed as authorized representative of Assemble Capital LLC, and Flora Batoon signed as authorized representative of Ginger Mountain Lodge LLC.  Neither of them were shown in the contractual documents as signing in their individual capacities.

5.      Flora Batoon is shown in the records of the California Secretary of State as the sole Managing Member of GINGER MOUNTAIN LODGE LLC.  Plaintiff fails to state facts sufficient to constitute a duty of Flora Batoon in her individual capacity to plaintiff as another individual.

6.      In his Complaint, plaintiff represents he was acting under the fictitious business name of "Assemble" but plaintiff fails to make any factual allegation that he is the same person

as or the alter ego of the contractual buyer ASSEMBLE CAPITAL LLC. The El Dorado County Recorder does not have any filing of a fictitious business name for Assemble Capital, which is a prerequisite for plaintiff to bring litigation under that fictitious name.

7. The contractual documents state that buyer ASSEMBLE CAPITAL LLC is a Delaware corporation. The California Secretary of State does not have any record of ASSEMBLE CAPITAL LLC qualifying to do business in the State of California, therefore that corporation cannot sue or defend in a California court.

8. The contract being sued under requires the parties to participate in mediation and arbitration prior to bringing any legal action. Defendant Batoon's counsel agreed with plaintiff's counsel to participate in mediation, and selected a mediator, but this Complaint was filed prior to any mediation, therefore this Demurrer should be sustained without leave to amend for failure of plaintiff to comply with the mediation prerequisite.

9. Plaintiff fails to state, itemize or otherwise describe the duty of defendant to him the breach of which caused his damages, with links to what damages were caused by which acts or omissions by defendant, which are a required element of any such claim, are required by CCP §425.10(a)(2), and are essential to give notice to defendant what he is complained of.

10. A demurrer is proper and should be sustained where plaintiff's complaint fails to, among other things, state facts sufficient to constitute a cause or causes of action, or the pleading fails due to uncertainty (including ambiguous and unintelligible) (CCP §430.10).

Respectfully submitted,

Dated: March 14, 2023

Robert P. Huckaby,
Attorney for Defendant,
Flora Batoon

Demurrer to the Complaint, page 7

# DECLARATION OF ROBERT P. HUCKABY

1. I am an adult competent to testify, I am an attorney admitted to practice before all the courts of the State of California, and I am counsel for defendant herein.

2. I called the attorney for plaintiff on the phone number identified on their Complaint. The person who answered the phone said the attorney was working out of the office but would receive a voice mail, and connected me to that voice mail. I left a message that I was attempting to meet and confer prior to filing this Demurrer. I left my cell phone number but did not receive a call back.

3. My assistant had prior email correspondence with plaintiff's counsel Dana Denno related to an extension of time to answer, so I also sent an email message to plaintiff's counsel that I was attempting to meet and confer prior to filing this Demurrer. I left my email address and cell phone number but did not receive any response.

4. I queried the records of the California Secretary of State and they reported back that there was no company under the name of Assemble Capital registered to do business in the State of California.

5. I queried the records of the El Dorado County Recorder and they reported back that there was no fictitious business name filed for Assemble Capital.

6. The records of the California Secretary of State show Flora Batoon as the sole Managing Member of Ginger Mountain Lodge LLC.

7. I had email correspondence with counsel for plaintiff about selecting a mediator, and a mediator was agreed upon, but this lawsuit was filed prior to any mediation or arbitration being conducted.

I declare the foregoing is true and correct under penalty of perjury under the laws of the State of California.

Dated: March 14, 2023

_____
Robert P. Huckaby

| 1 | CASE NAME: | DEGOLISH V. PLACER TITLE |
| 2 | COURT: | EL DORADO SUPERIOR COURT, SOUTH LAKE TAHOE |
| 3 | CASE NUMBER: | 22CV1845 |

4

5                        **PROOF OF SERVICE BY MAIL**

6    STATE OF CALIFORNIA, COUNTY OF EL DORADO:

7         I am employed in the County of El Dorado, State of California. I am over the age of 18

8    and not a party to the within action. My business address is 3330 Lake Tahoe Blvd. #10, South

9    Lake Tahoe, CA 96150

10        On this date I served the document described as NOTICE OF AND DEMURRER BY

11   DEFENDANT FLORA BATOON TO PLAINTIFF'S COMPLAINT, MEMORANDUM OF

12   POINTS AND AUTHORITIES, DECLARATION OF ROBERT HUCKABY on the interested

13   parties in this action by placing a true copy thereof in a sealed envelope and depositing such

14   envelope in the mail at South Lake Tahoe, California, first class postage prepaid, addressed as

15   follows:

16       McCormick, Barstow, Sheppard, Wayte & Carruth LLP
         Dana B. Denno
17       7647 North Fresno St.
         Fresno, CA 93720
18
         Jordan Finfer
19       Patzik, Frank & Samotny Ltd.
         200 S. Wacker #2700
20       Chicago, IL 60606

21        I declare under penalty of perjury under the laws of the State of California that the

22   foregoing is true and correct.

23        Dated:  March 14, 2023

24                                          _____
                                            Robert P. Huckaby
25

26

27

28

---

Proof of Service

# EXHIBIT 3

1  DOUGLAS R. ROECA, Esq. CSB 77931
   Attorney at Law
2  3080 Cedar Ravine Road
   Placerville, CA 95667
3  Telephone: (530) 626-2511

4  Attorney for PLACER TITLE COMPANY

5

6

7

8                  IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     IN AND FOR THE COUNTY OF EL DORADO

10

11  JACOB DEGOLISH, dba ASSEMBLE          )     Case No. 22CV1845
    CAPITAL LLC,                          )
12                                        )     NOTICE OF HEARING OF DEMURRER
                      Plaintiff,          )     TO COMPLAINT
13                                        )          B Y  F A X
             vs.                          )
14                                        )     Date:  4-28-23
    PLACER TITLE COMPANY, et al.,         )     Time:  3:00 p.m.
15                                        )     Dept:  3
                      Defendants.         )
16                                        )
                                          )
17

18         TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

19         Notice is hereby given that the demurrer of defendant PLACER TITLE COMPANY to plaintiff's

20  complaint has been set for hearing on April 28, 2023, at 3:00 p.m., or as soon thereafter as the matter may

21  be heard, in Department 3 of the above entitled court, located at 1354 Johnson Blvd, South Lake Tahoe,

22  California.

23         The demurrer will be based on this notice, the memorandum of points and authorities, the request

24  for judicial notice, and the demurrer served and filed herewith, the pleadings on file herein, and on such

25  other oral and written materials as may be presented at the hearing.

26  Dated: March 17, 2023

27

28                                             DOUGLAS R. ROECA, Attorney
                                               for PLACER TITLE COMPANY

    Notice of Hearing Demurrer to Complaint

# PROOF OF SERVICE

**Degolish v. Placer Title Company, et al.**                    **Case No. 22CV1845**

I am a citizen of the United States and employed in El Dorado County, California; I am over the age of eighteen years and not a party to the within action; my business address is 3080 Cedar Ravine Road, Placerville, California 95667.

On **March 17, 2023**, I caused the within NOTICE OF HEARING OF DEMURRER TO COMPLAINT, to be served as follows:

___    MAIL - I am familiar with the business practices of the law offices at 3080 Cedar Ravine Road, Placerville, California for collecting and processing mail and know that the mail in said office is collected and processed so that this piece of mail was deposited with the United States Postal Services on the same date as is indicated above.

___    FACSIMILE - _____, 2023, by use of facsimile machine, I served a true copy of the aforementioned document(s) on the parties to the numbers as set forth below.

**XX**    ELECTRONIC MAIL- **March 17, 2023**, via electronic mail, I served a true copy of the aforementioned document(s) on the parties to the numbers as set forth below.

Dana B. Denno
McCormick, Barstow, Sheppard, Wayte & Caruth LLP
4647 North Fresno Street
Fresno, CA 93720
dana.denno@mccormickbarstow.com

Jordan Finfer
Patzik, Frank & Samotny Ldt.
200 S. Wacker, Suite 2700
Chicago, IL 60606
Jfinfer@pfs-law.com

Robert P. Huckaby, Esq.
3330 Lake Tahoe Blvd #10
South Lake Tahoe, CA 96150
huckaby.law@sbcglobal.net
bobhuckaby@aol.com

Debra L. Samuels, Esq.
Samuels Law P.C.
2281 Lava Ridge Court, Suite 300
Roseville, CA 95661
E-mail: Samuels@Samuels-Law.com

Executed on March 17, 2023, at Placerville, California.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Lucille J. Bluemel

Notice of Hearing Demurrer to Complaint

DOUGLAS R. ROECA, Esq. CSB 77931
Attorney at Law
3080 Cedar Ravine Road
Placerville, CA 95667
Telephone: (530) 626-2511

Attorney for PLACER TITLE COMPANY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF EL DORADO

| | |
|---|---|
| JACOB DEGOLISH, dba ASSEMBLE CAPITAL LLC, <br><br> Plaintiff, <br><br> vs. <br><br> PLACER TITLE COMPANY, et al., <br><br> Defendants. | Case No. 22CV1845 <br><br> DEMURRER TO COMPLAINT <br><br> *BY FAX* <br><br> Date: 4-28-23 <br> Time: 3:00 p.m. <br> Dept: 3 |

Defendant PLACER TITLE COMPANY ("Placer") hereby demurs to plaintiff's complaint as follows:

1. Count Three of the complaint fails to state a cause of action against Placer.

2. Count Three of the complaint is uncertain in that at ¶¶40 - 42, lines 15-24, it is alleged that after September 14, 2022, Placer's escrow agent Lila Rohrich informed plaintiff she had been aware of the alleged fraud for more than eight months, which would be during January 2022 and after escrow had been opened. However, at ¶73, lines 11-13, it is alleged that Lila Rohrich was aware of the alleged fraud prior

\\\

\\\

\\\

\\\

Demurrer to Complaint

1    to the signing of the contract on October 28, 2021 (See ¶17, lines 16-18), which would be prior to opening

2    escrow.

3    Dated: March 17, 2023

4

                                                         DOUGLAS R. ROECA, Attorney

5                                                           for PLACER TITLE COMPANY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Demurrer to Complaint

**PROOF OF SERVICE**

**Degolish v. Placer Title Company, et al.**                    **Case No. 22CV1845**

I am a citizen of the United States and employed in El Dorado County, California; I am over the age of eighteen years and not a party to the within action; my business address is 3080 Cedar Ravine Road, Placerville, California 95667.

On **March 17, 2023**, I caused the within DEMURRER TO COMPLAINT, to be served as follows:

___ MAIL - I am familiar with the business practices of the law offices at 3080 Cedar Ravine Road, Placerville, California for collecting and processing mail and know that the mail in said office is collected and processed so that this piece of mail was deposited with the United States Postal Services on the same date as is indicated above.

___ FACSIMILE - _____, 2023, by use of facsimile machine, I served a true copy of the aforementioned document(s) on the parties to the numbers as set forth below.

_XX_ ELECTRONIC MAIL- **March 17, 2023**, via electronic mail, I served a true copy of the aforementioned document(s) on the parties to the numbers as set forth below.

Dana B. Denno
McCormick, Barstow, Sheppard, Wayte & Caruth LLP
4647 North Fresno Street
Fresno, CA 93720
dana.denno@mccormickbarstow.com

Jordan Finfer
Patzik, Frank & Samotny Ldt.
200 S. Wacker, Suite 2700
Chicago, IL 60606
Jfinfer@pfs-law.com

Robert P. Huckaby, Esq.
3330 Lake Tahoe Blvd #10
South Lake Tahoe, CA 96150
huckaby.law@sbcglobal.net
bobhuckaby@aol.com

Debra L. Samuels, Esq.
Samuels Law P.C.
2281 Lava Ridge Court, Suite 300
Roseville, CA 95661
E-mail: Samuels@Samuels-Law.com

Executed on March 17, 2023, at Placerville, California.

I declare under penalty of perjury that the foregoing is true and correct.

_Lucille J. Bluemel_
Lucille J. Bluemel

Demurrer to Complaint

1  DOUGLAS R. ROECA, Esq. CSB 77931
   Attorney at Law
2  3080 Cedar Ravine Road
   Placerville, CA 95667
3  Telephone: (530) 626-2511

4  Attorney for PLACER TITLE COMPANY

5

6

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF EL DORADO

10

11  JACOB DEGOLISH, dba ASSEMBLE          )   Case No. 22CV1845
    CAPITAL LLC,                           )
12                                          )   REQUEST FOR JUDICIAL NOTICE IN SUPPORT
               Plaintiff,                  )   OF PLACER TITLE COMPANY'S DEMURRER
13                                          )   TO PLAINTIFF'S COMPLAINT
            vs.                             )                      BY FAX
14                                          )   Date:  4-28-23
    PLACER TITLE COMPANY, et al.,          )   Time:  3:00 p.m.
15                                          )   Dept:  3
               Defendants.                  )
16                                          )
                                            )
17

18        Defendant PLACER TITLE COMPANY hereby requests that the court take judicial notice of the

19  operating agreement of Ginger Mountain Lodge, LLC, a copy of which is attached hereto, pursuant to Cal.

20  Evid. Code §§452(h) and 453. (See *Marina Tenants Assn. v. Deauville Marina Development Co.* (1986)

21  181 Cal.App.3d 122, 130; *Ascherman v. General Reinsurance Corp.* (1986) 183 Cal.App.3d 307,

22  310-311.)

23  Dated: March 17, 2023
                                            _____
                                            DOUGLAS R. ROECA, Attorney
24                                          for PLACER TITLE COMPANY

25

26

27

28

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | **Degolish v. Placer Title Company, et al.**         **Case No. 22CV1845** |

1         **PROOF OF SERVICE**

2   <u>**Degolish v. Placer Title Company, et al.**</u>        <u>**Case No. 22CV1845**</u>

3       I am a citizen of the United States and employed in El Dorado County, California; I am over the

4   age of eighteen years and not a party to the within action; my business address is 3080 Cedar Ravine Road, Placerville, California 95667.

5       On **March 17, 2023**, I caused the within REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEMURRER TO COMPLAINT, to be served as follows:

6

7   ____   MAIL - I am familiar with the business practices of the law offices at 3080 Cedar Ravine Road, Placerville, California for collecting and processing mail and know that the mail in said office is collected and processed so that this piece of mail was deposited with the United States Postal

8      Services on the same date as is indicated above.

9   ____   FACSIMILE - _____, **2023**, by use of facsimile machine, I served a true copy of the aforementioned document(s) on the parties to the numbers as set forth below.

10

   **XX**   ELECTRONIC MAIL- **March 17, 2023**, via electronic mail, I served a true copy of the

11      aforementioned document(s) on the parties to the numbers as set forth below.

12

13   Dana B. Denno                               Robert P. Huckaby, Esq.
      McCormick, Barstow, Sheppard, Wayte & Caruth     3330 Lake Tahoe Blvd #10

14   LLP                                    South Lake Tahoe, CA 96150
      4647 North Fresno Street                  huckaby.law@sbcglobal.net

15   Fresno, CA 93720                       bobhuckaby@aol.com
      dana.denno@mccormickbarstow.com

16                                        Debra L. Samuels, Esq.
      Jordan Finfer                              Samuels Law P.C.

17   Patzik, Frank & Samotny Ldt.               2281 Lava Ridge Court, Suite 300
      200 S. Wacker, Suite 2700                 Roseville, CA 95661

18   Chicago, IL 60606                      E-mail: Samuels@Samuels-Law.com
      Jfinfer@pfs-law.com

19       Executed on March 17, 2023, at Placerville, California.

20       I declare under penalty of perjury that the foregoing is true and correct.

21

22

23                           _____
                               Lucille J. Bluemel

24

25

26

27

28

# EXHIBIT 1

# GINGER MOUNTAIN LODGE, LLC

## A California
## Limited Liability Company
## Operating Agreement

GINGER MOUNTAIN LODGE, LLC

A California Limited Liability Company

This Operating Agreement (this "Agreement") is entered into effective May __, 2015, by and among Eddie Batoon, Flora Batoon, Robert Durward, and Julia C. Durward (each individually referred to as a "Member" and collectively as "Members").

The parties have agreed to organize a limited liability company in accordance with the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, the parties agree as follows:

## Article I
## Defined Terms

The following capitalized terms shall have the respective meanings specified in this Article I. Capitalized terms not defined in this Agreement, (including *Exhibit* B), shall have the meaning specified in the Act.

"*Act*" means the California Limited Liability Company Act, as amended from time to time.

"*Affiliate*" means (a) a Person directly or indirectly controlling, controlled by, or under common control with another Person; (b) a Person owning or controlling ten percent (10%) or more of the outstanding voting securities or beneficial interests of another Person; (c) an officer, director, partner, or member of the immediate family of an officer, director or partner, of another Person; and/or (d) any affiliate of any such Person.

"*Agreement*" means this Operating Agreement, as amended from time to time, including each exhibit hereto.

"*Assignee*" means the Person who has acquired an Economic Interest in the Company but is not a Member.

"*Cash Flow*" means all cash derived from operations of the Company (including interest received on reserves), without reduction for any noncash charges, but less cash used to pay current operating expenses and to pay or establish reasonable reserves for future expenses, debt payments, capital improvements, and replacements as determined by the Members.

"*Company*" means the limited liability company formed in accordance with this Agreement.

"*Contribution*" means any money, property, or services rendered, or a promissory note or other binding obligation to contribute money or property, or to render services as permitted in this Agreement or by law, which a Member contributes to the Company as capital in that

2

Member's capacity as a Member pursuant to this Agreement or any other agreement between the Members, including an agreement as to value.

"*Economic Interest*" means a Person's right to share in the income, gains, losses, deductions, credit, or similar items of, and to receive Distributions from, the Company, but does not include any other rights of a Member including, without limitation, the right to Vote or to participate in management, or any right to information concerning the business and affairs of the Company.

"*Initial Contribution*" means the amount listed in *Exhibit* A under Initial Capital Contribution.

"*Interest Holder*" means any Person who holds an Economic Interest, whether as a Member or as an Assignee of a Member.

"*Involuntary Withdrawal*" means, with respect to any Member, the affirmative Vote of Members, excluding the Member whose withdrawal is being Voted upon, holding not less than seventy-five percent 75% of the Membership Interests to terminate such Member's Membership Interest.

"*Member*" means any person who executes a counterpart of this Agreement as a Member and any Person who subsequently is admitted as a Member of the Company.

"*Membership Interest*" means a Member's rights in the Company, collectively, including the Member's Economic Interest, any right to Vote or participate in management, and any right to information concerning the business and affairs of the Company.

"*Percentage*" means, as to a Member, the Percentage set forth after the Member's name on *Exhibit* A, as amended from time to time, and as to an Interest Holder who is not a Member, the Percentage or part of a Percentage that corresponds to the portion of a Member's Economic Interest that the Interest Holder has acquired, to the extent the Interest Holder has succeeded to a Member's interest.

"*Person*" means and includes an individual, corporation, partnership, association, limited liability company, trust, estate, or other entity.

"*Secretary of State*" means the Secretary of State of the State of California.

"*Transfer*" means, when used as a noun, any sale, hypothecation, pledge, assignment, attachment, or other transfer, and, when used as a verb, to sell, hypothecate, pledge, assign, or otherwise transfer.

"*Voluntary Withdrawal*" means a Member's disassociation from the Company by means other than a Transfer or an Involuntary Withdrawal.

3

## Article II
## Formation and Name; Office; Purpose; Term

2.1.  *Organization.* The parties hereby organize a limited liability company pursuant to the Act and the provisions of this Agreement. The Company has caused Articles of Organization to be prepared, executed, and filed with the Secretary of State.

2.2.  *Name of the Company.* The name of the Company is GINGER MOUNTAIN LODGE, LLC.

2.3.  *Purpose.* The Company is organized to engage in any lawful act or activity for which a limited liability company may be organized under the Beverly-Killea Limited Liability Company Act, including but not limited to purchase, lease, operate, develop, and sell real estate property, and to do any and all things necessary, convenient, or incidental to that purpose.

2.4.  *Term.* The Company shall continue in existence perpetually, unless sooner dissolved as provided by this Agreement or required by the Act.

2.5.  *Principal Place of Business.* The Company's Principal Place of Business shall be located at 2644 Lake Tahoe Blvd., South Lake Tahoe, CA 96150, or at any other place within the State of California upon which the Members agree.

2.6.  *Resident Agent.* The name and address of the Company's resident agent in the State of California is Julia C. Durward, 1681 Shortridge Avenue, San Jose, CA 95116.

2.7.  *Members.* The name, present mailing address, taxpayer identification number, initial Contribution and Percentage of each Member are set forth on *Exhibit* A.

2.8.  *Tax Treatment as a Partnership.* The Members intend that the company be treated as a partnership under Regulation Section 301.7701-3 and analogous provisions of state tax laws, and the Company shall not elect to be treated as an association taxable as a corporation.

## Article III
## Members; Capital; Capital Accounts

3.1.  *Initial Contributions.* Upon the execution of this Agreement, the Members shall contribute to the Company cash in the amounts respectively set forth on *Exhibit* A.

3.2.  *No Additional Contributions.* No Member shall be required to contribute any additional capital to the Company, and no Member shall have personal liability for any obligation of the Company except as expressly provided by law.

4

3.3. *No Interest on Contributions.* Neither Members nor any Interest Holders shall be paid interest with respect to Contributions.

3.4. *Return of Contributions.* Except as otherwise provided in this Agreement, no Member nor Interest Holder shall have the right to receive the return of any Contribution or withdraw from the Company, except upon the dissolution of the Company.

3.5. *Form of Return of Capital.* If a Member or an Interest Holder is entitled to receive the return of a Contribution, the Company may distribute to such person, in lieu of money, notes, or other, property having a value equal to the amount of money distributable to the Member or Interest Holder.

3.6. *Capital Accounts.* A separate Capital Account shall be maintained for each Member and Interest Holder.

3.7. *Loans and Other Business Transactions.* Any Member may, at any time, make or cause a loan to be made to the Company in any amount and on those terms upon which the Company and the Member agree. Members may also transact other business with the Company and, in doing so, they shall have the same rights and be subject to the same obligations arising out of any such business transaction as would be enjoyed by and imposed upon any Person, not a Member, engaged in a similar business transaction with the Company.

3.8. Except as required under the Act or as expressly set forth in this Agreement, no Member will be personally liable for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort or otherwise.

## Article IV
### Profit, Loss, and Distributions

4.1. *Distribution of Cash Flow.* Except as provided in Section 4.3, Cash Flow for each taxable year of the Company shall be distributed to the Interest Holders in proportion to their Percentages no later than seventy-five (75) days after the end of the taxable year.

4.2. *Allocation of Profit or Loss.* After giving effect to the special allocations set forth in *Exhibit* B, for any taxable year of the Company, Profit and Loss shall be allocated to the Interest Holders in proportion to their Percentages.

4.3. *Liquidation and Dissolution.*

(a) Upon liquidation of the Company, the assets of the Company shall be distributed to the Interest Holders in accordance with their positive balances in their respective Capital Accounts, after giving effect to all Contributions, Distributions, and allocations for all periods. Distributions to the Interest Holders pursuant to this *Section* 4.3(a) shall be made in accordance with Regulation Section 1.704-1(b)(2)(ii)(b)(2).

5

(b)     No Interest Holder shall be obligated to restore a Negative Capital Account.

## Article V
## MANAGEMENT AND CONTROL OF THE COMPANY

5.1.    *Management.* The Company shall be managed by the Members. Except as specifically provided otherwise in this Agreement, each Member shall have the right to act for and bind the Company in the ordinary course of its business.

5.2.    *Meetings of and Voting by Members.*

(a)     A meeting of the Members may be called at any time by any Member. Meetings of Members shall be held at the Company's principal place of business or at any other place whether in California or elsewhere, designated by the Person or Persons calling the meeting. Not less than ten (10) nor more than sixty (60) days before each meeting, the Person or Persons calling the meeting shall give written notice of the meeting to each Member entitled to Vote at the meeting. The notice shall state the time, place, and purpose of the meeting. Notwithstanding the foregoing provisions, each Member who is entitled to notice may waive notice, either before or after the meeting, by executing a waiver of such notice, or by appearing at and participating, in person or by proxy, in the meeting. Unless this Agreement provides otherwise, at a meeting of Members, the presence in person or by Proxy of Members holding Percentages which aggregate not less than fifty-one percent (51%), constitutes a quorum. A Member may Vote either in person or by written Proxy signed by the Member or by the Member's duly authorized agent.

(b)     Except as otherwise provided in this Agreement, the affirmative Vote of Members holding a majority of the aggregate Percentages present at the meeting in person and by proxy shall be required to approve any matter coming before the Members.

(c)     In lieu of holding a meeting, the Members may take action by written consents specifying the action to be taken, which consents must be executed and delivered to the Company by Members whose combined Voting Power constitutes not less than 51% of the total Voting Power of all Members. Any such approved action shall be effective immediately. The Company shall give prompt notice to all Members of any action approved by Members by less than unanimous consent.

(d)     The following matters shall require the Vote or consent of the percentage interest of Members indicated after each such item for such action to be approved by the Members:

(1)     a decision to continue the business of the Company after dissolution of the Company (51%);

(2)     approval of the transfer of a Membership Interest and admission of an Assignee as a Member (51%). Any such consent to transfer or admission may be unreasonably withheld in the sole and absolute discretion of the consenting party;

6

(3)     an amendment to the Articles of Organization or this Agreement (51%).

(e)     The Members recognize that, given the initial makeup of the membership interests, the possibility of a deadlock may exist. Therefore, the Members agree that for so long as the membership interests are such that a deadlock could arise, if a majority of the Members cannot agree upon a material issue affecting ownership, management, or operation of the business of the Company, they will submit the matter for review to a neutral and mutually acceptable "tie breaker" who is familiar with the Company's business. The decision of such tie breaker will be binding. The tie breaker shall be an individual person. The decision of the tie breaker shall be final and binding on the Members and become the decision of the Company. If the Members are unable to agree upon a tie breaker, the deadlock shall be resolved by binding mediation through JAMS or such other mediation forum as mutually agreed-upon by the Members.

5.3.     *Personal Service.* No Member shall be required to perform services for the Company solely by virtue of being a Member. Unless approved by the Members, no Member shall be entitled to compensation for services performed for the Company after the effective date of this Agreement. However, upon substantiation of the amount and purpose thereof, the Members shall be entitled to reimbursement for expenses reasonably incurred, and advances of funds reasonable made, in furtherance of the business of the Company.

5.4.     *Duties of Parties.*

(a)     Each Member shall devote such time to the business and affairs of the Company as is necessary to carry out the Member's duties set forth in this Agreement.

(b)     Except as otherwise expressly provided in *Section* 5.4(c), nothing in this Agreement shall be deemed to restrict in any way the rights of any Member, or of any Affiliate of any Member, to conduct any other business or activity whatsoever, and no Member shall be accountable to the Company or to any other Member with respect to that business or activity, even if the business or activity competes with the Company's business. The organization of the Company shall be without prejudice to the Members' respective rights (or the rights of their respective Affiliates) to maintain, expand, or diversify such other interests and activities and to receive and enjoy profits or compensation therefrom. Each Member waives any rights the Member might otherwise have to share or participate in such other interests or activities of any other Member or the Member's Affiliates.

(c)     The only fiduciary duties a Member owes to the Company and the other Members are the duty of loyalty and the duty of care set forth in subdivisions (1) and (2):

(1)     a Member's duty of loyalty to the Company and the other Members is limited to the following:

7

(A) to account to the Company and hold as trustee for it any property, profit, or benefit derived by the Member in the conduct or winding up of the Company's business or derived from a use by the Member of Company property, including the appropriation of a Company opportunity, without the consent of the other Members;

(B) to refrain from dealing with the Company in the conduct or winding up of the Company business as or on behalf of a party having an interest adverse to the Company without the consent of the other Members; and

(C) to refrain from competing with the Company in the conduct of the Company business before the dissolution of the Company without the consent of the other Members.

(2) a Member's duty of care to the Company and the other Members in the conduct and winding up of the Company business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

5.5. *Indemnification of Members.*

(a) A Member shall not be liable, responsible, or accountable, in damages or otherwise, to any other Member or to the Company for any act performed by the Member with respect to Company matters, and within the standard of care specified in *Section* 5.4(c)(2).

(b) The Company shall indemnify each Member for any act performed by the Member with respect to Company matters, unless such act constitutes grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

### Article VI
### Transfer of Interests and Withdrawals of Members

6.1. *Transfers.* Except as herein provided, no Member may Transfer all, or any portion of, or any interest or rights in, the Membership Interest owned by the Member. Each Member hereby acknowledges the reasonableness of this prohibition in view of the purposes of the Company and the relationship of the Members. The attempted Transfer of any portion or all of a Membership Interest in violation of the prohibition contained in this *Section* 6.1 shall be deemed invalid, null and void, and of no force or effect, except any Transfer mandated by operation of law, and then only to the extent necessary to give effect to such Transfer by operation of law.

(a) A Member may Transfer all or any portion of or any interest or rights in the Member's Membership Interest if each of the following conditions ("Conditions of Transfer") is satisfied:

(1) the Transfer may be accomplished without registration, or similar process, under federal and state securities laws;

8

(2)  the transferee delivers to the Company a written agreement to be bound by the terms of Article VI;

(3)  the Transfer will not result in the termination of the Company pursuant to IRC Section 708;

(4)  the Transfer will not result in the Company being subject to the Investment Company Act of 1940, as amended, or the Company being treated as a publicly traded partnership under IRC Section 7704;

(5)  the transferor or the transferee delivers the following information to the Company: (i) the transferee's taxpayer identification number; and (ii) the transferee's initial tax basis in the transferred Membership Interest; and

(6)  the transferor complies with the provisions set forth in *Section* 6.1(c).

(b)  If the Conditions of Transfer are satisfied, the Member may Transfer all or any portion of the Member's Membership Interest. The Transfer of an Economic Interest pursuant to this *Section* 6.1 shall not result in the transfer of any of the transferor's other Membership rights. The transferee of the Economic Interest shall be an Assignee and shall have no right to: (i) become a Member; (ii) exercise any Membership rights other than those specifically pertaining to the ownership of an Economic Interest; or (iii) act as an agent of the Company. The Assignee shall become a member only if the requirements of *Section* 5.2(d)(2) are met.

(c)  *Right of First Offer.*

(1)  if a Member (a "Transferor") desires to Transfer all or any portion of, or any interest or rights in the Transferor's Membership Interest (the "Transferor Interest"), the Transferor shall notify the Company of that desire (the "Transfer Notice"). The Transfer Notice shall describe the Transferor Interest. The Company, or its nominee(s), shall have the option (the "Purchase Option") to purchase all of the Transferor Interest for a price (the "Purchase Price") equal to the Appraised Value of said Transferor Interest.

(2)  the Purchase Option shall be and remain irrevocable for a period (the "Transfer Period") ending at 11:59 P.M. local time at the Company's principal office on the thirtieth (30th) day following the day the Transfer Notice is given to the Company.

(3)  at any time during the Transfer Period, the Company and/or its nominee (the "Purchaser(s)") may elect to exercise the Purchase Option by giving written notice of its election to the Transferor. The Transferor shall not be deemed a Member for the purpose of Voting on whether the Company shall elect to exercise the Purchase Option.

(4)  the Purchaser's notice of its election to purchase the Transfer Interest shall fix a closing date (the "Transfer Closing Date") for the purchase, which shall not be

9

earlier than five (5) days after the date of the notice of election nor more than thirty (30) days after the expiration of the Transfer Period.

(5)     the Purchase Price shall be paid in cash on the Transfer Closing Date unless the Purchasers elect to pay the Purchase Price in installments pursuant to *Section 6.5*.

(6)     if the Company's Purchase Option is not exercised, the Transferor shall be permitted to offer and sell the Transferor Interest to any other person for a period of three (3) months (the "Free Transfer Period") after the expiration of the Transfer Period. If the Transferor does not Transfer the Transferor Interest within the Free Transfer Period, the Transferor's right to Transfer the Transferor Interest pursuant to this Section shall cease and terminate.

(7)     any Transfer of the Transferor Interest made after the last day of the Free Transfer Period or without strict compliance with the terms, provisions, and conditions of this Section and all other terms, provisions, and conditions of this Agreement, shall be null and void and of no force or effect.

6.2.     *Voluntary Withdrawal.*

(a)     No Member shall have the right or power to effect a Voluntary Withdrawal from the Company, except upon the affirmative Vote of Members holding a majority of the aggregate Percentages.

(b)     Upon withdrawal of any Member, as permitted under the terms of this *Section 6.2*, the withdrawn Member and the Company shall have the respective rights and obligations set forth in *Section 6.3*, provided, however, that the Withdrawn Member's Membership Interest shall be valued at Book Value, and, provided further, that the Company shall have the right to pay the amount due the Withdrawing Member in installments pursuant to *Section 6.5*.

6.3.     *Involuntary Withdrawal.* Immediately upon the occurrence of an Involuntary Withdrawal, the successor of the withdrawn Member shall thereupon become an Interest Holder, but shall not become a Member.

6.4.     *Appraised Value.*

(a)     The term "Appraised Value" means the appraised value of the Company as hereinafter provided. Within fifteen (15) days after the Transfer Notice, the Company and the Transferor shall each appoint an appraiser to determine the value of the Company. If the two appraisers agree upon such value, they shall jointly render a single written report stating that value. If the two appraisers cannot agree upon the value of the Company, they shall each render a separate written report and shall appoint a third appraiser, who shall appraise the Company, determine its value, and render a written report of such appraiser's opinion thereon. Each party shall pay the fees and other costs of the appraiser appointed by such party, and the fees and other costs of the third appraiser shall be shared equally by both parties.

10

(b)    The value contained in the aforesaid joint written report or written report of the third appraiser, as the case may be, shall be the Appraised Value; provided, however, that if the value of the equity contained in the appraisal report of the third appraiser is more than the higher of the first two appraisals, the higher of the first two appraisals shall govern; and provided further, that if the value of the equity contained in the appraisal report of the third appraiser is less than the lower of the first two appraisals, the lower of the first two appraisals shall govern.

6.5.    *Installment Payments*. If the Company or its nominee, as the case may be (the "Purchaser"), elects to pay the Purchase Price on an installment basis (the "Indebtedness"), such payments shall be structured as follows:  an upfront payment in cash or immediately available funds equal to twenty percent of the Purchase Price, and the balance payable in equal monthly installments of principal and interest (wherein said interest shall be equal to the Applicable Federal Rate in effect at the time) over a period that shall expire no later than five (5) years from the Transfer Closing Date, and the Purchaser shall evidence the obligation to pay the Indebtedness by executing and delivering a promissory note to the Transferor.

## Article VII
### Dissolution, Liquidation, and Termination of the Company

7.1.    Events of Dissolution. The Company shall be dissolved upon the happening of any of the following events:

(a)    Upon the unanimous written agreement of the Members; or

(b)    Upon a judicial order or decree of dissolution.

7.2.    *No Dissolution upon Withdrawal of Member*. The Company shall not dissolve upon the Voluntary or Involuntary Withdrawal of any Member.

7.3.    *Procedure for Winding Up and Dissolution*. If the Company is dissolved, the remaining Members shall wind up its affairs. On winding up of the Company, the assets of the Company shall be distributed, first to creditors of the Company, including Interest Holders who are creditors, in satisfaction of the liabilities of the Company, and then to the Interest Holders, in accordance with *Section 4.3*.

7.4.    *Filing of Certificate of Cancellation*. Upon completion of winding up the affairs of the Company. the Members shall promptly file a Certificate of Cancellation of Articles of Organization with the Secretary of State. If there are no remaining Members, such Certificate shall be filed by the last Person to be a Member; if there are no remaining Members, or last Person to be a Member, the Certificate shall be filed by the legal or personal representatives of the last Person to be a Member. No Manager or Member shall be entitled to any compensation for services provided in winding up the Company.

11

## Article VIII
## Books, Records, Accounting, and Tax Elections

8.1. *Bank Accounts.* All funds of the Company shall be deposited in a bank account or accounts opened in the Company's name. The Members shall determine the financial institution or institutions at which the accounts will be opened and maintained, the types of accounts, and the Persons who will have authority with respect to the accounts and the funds therein.

8.2. *Maintenance of Books and Records.*

(a)     The Members shall keep or cause to be kept complete and accurate books, records, and financial statements of the Company and supporting documentation of transactions with respect to the conduct of the Company's business. The books, records, and financial statements of the Company shall be maintained on the [accrual basis in accordance with generally accepted accounting principles] [cash method of accounting]. Such books, records, financial statements, and documents shall include, but not be limited to, the following:

(1)     a current list of the full name and last known business or residence address of each Member and Interest Holder, in alphabetical order, with the Contribution and the share in profits and losses of each Member and Interest Holder specified in such list;

(2)     the Articles of Organization, including all amendments; and any powers-of-attorney under which the Articles of Organization or amendments were executed;

(3)     federal, state, and local income tax or information returns and reports, if any, for the six most recent taxable years;

(4)     this Agreement and any amendments, and any powers-of-attorney under which this Agreement or amendments were executed;

(5)     financial statements for the six most recent years; and

(6)     internal books and records for the current and four most recent years

(b)     Such books, records, and financial statements of the Company and supporting documentation shall be kept, maintained, and available at the Company's office within the State of California.

8.3. *Right to Inspect Books and Records; Receive Information.*

(a)     Upon the reasonable request of a Member or Interest Holder, for a purpose reasonably related to the interest of that Member or Interest Holder, the Company shall promptly deliver to the requesting Member, at the expense of the Company, a copy of this Agreement, as

12

well as the information required to be maintained by the Company under paragraphs (1) and (3) of *Section* 8.2(a).

(b)     Each Member and Interest Holder has the right upon reasonable request, and for purposes reasonably related to the interest of that Person as a Member or Interest Holder, to do the following:

(1)     to inspect and copy, during normal business hours, any of the records required to be maintained by the Company under *Section* 8.2(a); and

(2)     to obtain from the Company promptly after becoming available, a copy of the Company's federal, state, and local income tax or information returns for each year.

(c)     If the Company has more than thirty-five (35) Members, Members representing at least five percent (5%) of the Voting interests of all Members, or three or more Members, may make a written request to the Member responsible for maintaining the financial records of the Company for an income statement of the Company for the initial three-month, six-month, or nine-month period of the current fiscal year ended more than thirty (30) days prior to the date of the request, and a balance sheet of the Company as of the end of that period. The statement must be delivered or Mailed to the Members within thirty (30) days thereafter. The financial statements referred to in this Section shall be accompanied by the report thereon, if any, of the independent accountants engaged by the Company or, if there is no report, the certificate of the Member upon whom the request was made that the financial statements were prepared without audit from the books and records of the Company.

(d)     If the Company has more than thirty-five (35) Members, the Company shall cause an annual report to be sent to each Member not later than one hundred twenty (120) days after the close of the Company's fiscal year. Such report must contain the Company's balance sheet as of the end of the Company's fiscal year and an income statement and statement of changes in financial position for such fiscal year. The financial statements referred to in this Section shall be accompanied by the report thereon, if any, of the independent accountants engaged by the Company or, if there is no report, the certificate of the Member responsible for maintaining the financial records of the Company that the financial statements were prepared without audit from the books and records of the Company.

(e)     The Company shall send or shall cause to be sent to each Member and Interest Holder within ninety (90) days after the end of each fiscal year of the Company: (i) such information as is necessary to complete federal and state income tax or information returns, and (ii) if the Company has thirty-five (35) or fewer Members, a copy of the Company's federal, state, and local income tax or information returns for the fiscal year.

(f)     Unless otherwise expressly provided in this Agreement, the inspecting or requesting Member or Interest Holder, as the case may be, shall reimburse the Company for all reasonable costs and expenses incurred by the Company in connection with such inspection and copying of the Company's books and records and the production and delivery of any other books or records.

13

8.4.   *Annual Accounting Period.* The annual accounting period of the Company shall be its taxable year. The Company's taxable year shall be selected by the Members, subject to the requirements and limitations of the Code.

8.5.   *Tax Matters Partner.* Jim Nicholas shall be the "Tax Matters Partner" for the purposes of IRC Section 6231.

## Article IX
## General Provisions

9.1.   *Assurances.* Each Member shall execute all certificates and other documents and shall do all such filing, recording. publishing, and other acts as the Members deem appropriate to comply with the requirements of law for the formation and operation of the Company and to comply with any laws, rules, and regulations relating to the acquisition, operation, or holding of the property of the Company.

9.2.   *Notifications.* Any notice, demand, consent, election, offer, approval, request, or other communication (collectively, a "notice") required or permitted under this Agreement must be in writing and delivered personally, sent by certified or registered mail, postage prepaid, return receipt requested or sent by overnight courier. A notice must be addressed to an Interest Holder at the Interest Holder's last known address on the records of the Company. A notice to the Company must be addressed to the Company's principal office. A notice delivered personally will be deemed given only when acknowledged in writing by the Person to whom it is delivered. A notice that is sent by Mail will be deemed given three (3) business days after it is Mailed. A notice that is sent by courier will be deemed given one (1) business day after it is couriered. Any party may designate, by notice to all of the others, substitute addresses or addressees for notices; and, thereafter, notices are to be directed to those substitute addresses or addressees.

9.3.   *Specific Performance.* The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to remedy the injury fully. Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

9.4   *Integration; Amendment.* This Agreement constitutes the complete and exclusive statement of the agreement among the Members. It supersedes all prior written and oral statements, including any prior representation, statement, condition, or warranty. Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of all of the Members.

9.5.   *Applicable Law.* All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this

14

Agreement shall be governed by the internal law, not the law of conflicts, of the State of California.

9.6.    *Headings.* The headings herein are inserted as a matter of convenience only and do not define, limit, or describe the scope of this Agreement or the intent of the provisions hereof.

9.7.    *Binding Provisions.* This Agreement is binding upon, and to the limited extent specifically provided herein, inures to the benefit of, the parties hereto and their respective heirs, executors, administrators. personal and legal representatives, successors, and assigns.

9.8.    *Jurisdiction and Venue.* Any suit involving any dispute or matter arising under this Agreement may only be brought in the appropriate United States District Court in California or any California State Court having jurisdiction over the subject matter of the dispute or matter. All Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

9.9.    *Interpretation.* Common nouns and pronouns shall be deemed to refer to the masculine, feminine, neuter, singular and plural, as the identity of the Person may in the context require. References to articles, sections (or subdivisions of sections), exhibits, annexes, or schedules are to those of this Agreement, unless otherwise indicated.

9.10.    *Separability of Provisions.* Each provision of this Agreement shall be considered separable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

9.11.    *Counterparts.* This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which, when taken together, constitute one and the same document. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

9.12    *Legal Counsel; Consultation with Attorney.* The Members understand and acknowledge that Ropers Majeski Kohn & Bentley (Law Firm), has represented the Company in the preparation of this Agreement and has not represented any of the Members in the preparation of this Agreement. Each Member acknowledges and agrees as follows:  (i) Law Firm is not representing the interests of such Member, and such Member is not relying on Law Firm in determining whether to enter into this Agreement; (ii) such Member has been advised to seek independent counsel, to the extent that Member deems it appropriate, to protect such Member's interests in connection with this Agreement, including, without limitation, advice as to the tax consequences of entering into this Agreement; and (iii) such Member will look solely to, and rely upon, such Member's own advisers with respect to the legal, financial and tax consequences of this investment.

9.13.    *Confidential Information.* Each Member will come into possession of and/or become aware of certain proprietary matters and affairs of the Company. Members will be in a

15

position of trust and confidence as to all trade secret information and other proprietary information relating to the Company's business that is not generally known to, or readily available to, the public and that is of a confidential, proprietary or secret nature and is or may be either applicable to, or related in any way to, the present or future business of the Company or the business of any client of the Company (collectively, "Confidential Information"). Confidential Information includes, but is not limited to: opportunities, techniques and strategies; various financial and operating data consisting of, among other things, marketing data, documents, files, electronically recordable data or concepts, computer software and hardware, inventions, improvements, books, papers, compilations of information, records and specifications; names and practices of existing and potential clients; names, marketing methods, operating practices and related information regarding the Company's existing and potential clients, joint venture partners, licensees, licensors, and vendors; prices and fee structures the Company obtains or has obtained or at which it sells, has sold or intends to sell its services; information regarding the Company's financial condition; fee structures applied to and compensation paid to the Company's consultants and employees and Members. Each Member agrees not to use, publish, disseminate, misappropriate, or otherwise disclose any Confidential Information, either while the Member is a Member or thereafter, except as required in the course of that Member's pursuit of the Company's business on behalf of the Company, or as may be required by applicable law. Each Member will take all reasonable precautions to protect the confidential nature of Confidential Information and all other documents or materials entrusted to such Member containing Confidential Information. Each Member agrees that, upon the earlier of the termination of that Member's services relationship (if any) with the Company or the time that Member ceases to be a Member, that Member will return all originals and copies of the Company's property in that Member's possession, including materials, memoranda, records, reports, client lists or other documents, and specifically including any documents containing any Confidential Information. This Section 9.13 will survive termination of this Agreement.

9.14.    *Representations.* Each Member represents and warrants to each other Member and the Company that such Member:

(a)    Has a pre-existing personal or business relationship with the Company or one or more of its Members, or by reason of such Member's business or financial experience, or by reason of the business or financial experience of such Member's financial advisor who is unaffiliated with and who is not compensated, directly or indirectly, by the Company or any Affiliate of the Company, such Member is capable of evaluating the risks and merits of an investment in the Company and of protecting such Member's own interests in connection with this investment.

(b)    Has not seen, received, been presented with, or been solicited by any leaflet, public promotional meeting, article or any other form of advertising or general solicitation as to the sale of the Company Interest.

(c)    Has acquired such Member's Interest for such Member's own account, for investment, and not with a view to or for the resale, distribution, subdivision or fractionalization thereof and no other person will have any direct or indirect beneficial interest in or right to the Interest;

16

(d) Has no contract, undertaking, understanding, agreement, or arrangement, formal or informal, with any person to sell, transfer, or pledge all or any portion of such Member's Interest; and has no current plans to enter into any such contract, undertaking, understanding, agreement, or arrangement;

(e) Has sufficient financial strength to hold the Interest as an investment and bear the economic risks of that investment (including possible complete loss of such investment) for an indefinite period of time; and

(f) Has been afforded full and complete access to the books, financial statements, records, contracts, documents and other information concerning the Company and its proposed activities, and has been afforded an opportunity to ask such questions of the Company's agents, accountants and other representatives concerning the Company's proposed business, operations, financial condition, assets, liabilities and other relevant matters as he or it has deemed necessary or desirable, and has been given all such information as has been requested, in order to evaluate the merits and risks of the investment contemplated herein.

9.15. *Estoppel Certificate*. Each Member shall, within ten (10) days after written request by any Member, deliver to the requesting Person a certificate stating, to the Member's knowledge, that: (a) this Agreement is in full force and effect; (b) this Agreement has not been modified except by any instrument or instruments identified in the certificate; and (c) there is no default hereunder by such Member, or if there is a default, the nature or extent thereof.

[Remainder of page intentionally blank]

17

IN WITNESS WHEREOF, the parties have executed, or caused this Agreement to be executed as of the date first above written.

MEMBERS:

_____
EDDIE BATOON

Address:

2471 Mitton Dr. San Jose
CA, 95148

Social Security Number:

24 - 52 - 9119

_____
FLORA BATOON

Address:

2971 Mitton Drive
San Jose, CA 95148
Social Security Number:

576 - 92 - 0768

_____
ROBERT DURWARD
1681 Shortridge Avenue
San Jose, CA 95116

Social Security Number:
621 - 69 - 9088

_____
JULIA C. DURWARD
1681 Shortridge Avenue
San Jose, CA 95116

Social Security Number: 529 - 33 - 7864

18

## Limited Liability Company
## Operating Agreement

### Exhibit A
### List of Members, Capital, and Percentages

| Name and Taxpayer Identification No. of Members | Initial Capital Contribution | Percentage Interest |
|---|---|---|
| Eddie Batoon | $_____ | 25% |
| Flora Batoon | $_____ | 25% |
| Robert Durward | $_____ | 25 % |
| Julia C. Durward | $_____ | 25 % |

19

## Exhibit B
## Special Tax Allocations and Tax Definitions

4.3.    *Special Allocations and Other Tax Provisions.*

    (a)    *Special Allocations.*

        (1)    No allocation of Profits or Loss under *Section* 4.2 will be made unless it would be considered, under the Regulations promulgated under Code Section 704(b) (the "704(b) Regulations"), either to have substantial economic effect, or to be in accordance with the Interest Holders' interests in the Company. To the extent necessary to comply with the foregoing, in lieu of the allocations set forth in *Section* 4.2, the Members may cause the Company's Profits or Losses, or any items thereof, to be reallocated among the Interest Holders in such manner as the Members may determine to be fair, appropriate and consistent with the provisions of the 704(b) Regulations, including, without limitation, the provisions of Regulations Section 1.704-2(f) (minimum gain chargeback), Section 1.704-2(i)(4) (partner nonrecourse debt minimum gain chargeback), and *Section* 1.704-1(b)(2)(ii)(d) (qualified income offset), each of which is incorporated herein by this reference.

        (2)    Special allocations of Profits (or items thereof) will be made to any Interest Holder if the Members determine that such Interest Holder's Capital Account would otherwise have a deficit capital account balance that (in absolute value) exceeds the maximum deficit balance that would be permitted under the 704(b) Regulations.

        (3)    If any allocation of Losses (or any item thereof) would result in a deficit balance in an Interest Holder's Capital Account that would (in absolute value) exceed the maximum deficit balance that would be permitted under the 704(b) Regulations, some or all of such Losses (or items thereof) may be reallocated to any other Interest Holders whose Capital Accounts would not have such excess deficit balances (in proportion to their respective Percentage Interests).

        (4)    The allocation provisions of this Agreement are intended to produce final Capital Account balances of the Interest Holders that will permit liquidating distributions that are made in accordance with such final Capital Account balances under *Section* 4.3(a) to be equal to the distributions that would occur if such liquidating distributions were to be made to the Interest Holders in proportion to their Percentages. To the extent that the tax allocation provisions of this Agreement would not produce such final Capital Account balances, (i) the Members shall amend such provisions if and to the extent necessary to produce such result; and (ii) the Members shall reallocate taxable income or taxable loss of the Company for prior open years (or items of gross income and deduction of the Company) among the Interest Holders to the extent it is not possible to achieve such result with allocations of income (including gross income) and deduction for the current year and future years.

20

(b)    *General.*

(1)    For purposes of reporting each Interest Holder's share of federal, state and any applicable local income taxes, items of income, gain, loss, deduction and credit will be allocated in accordance with the provisions of Code Section 704(c) and the Regulations promulgated thereunder, so as to properly take into account any variation between the adjusted tax basis and the book value of Company assets, using any method that complies with Regulations Section 1.704-3 as the Members determine to be fair and appropriate.

(2)    All amounts required to be withheld pursuant to Code Section 1446 or any other provision of federal, state, or local tax law will be treated as amounts actually distributed to the affected Interest Holders for all purposes of this Agreement. If the Members determine that the Company does not have sufficient funds to satisfy such withholding obligations for an Interest Holder, that Interest Holder shall contribute the funds necessary to satisfy the withholding obligation.

(3)    If any assets of the Company are distributed in kind to the Interest Holders, those assets shall be valued on the basis of their fair market value, and any Interest Holder entitled to any interest in those assets shall receive that interest as a tenant-in-common with all other Interest Holders so entitled. Unless the Members otherwise agree, the fair market value of the assets shall be determined by an independent appraiser who shall be selected by agreement of the Members. The Profit or Loss for each unsold asset shall be determined as if the asset had been sold at its market value, and the Profit or Loss shall be allocated as provided in *Section* 4.1 and shall be properly credited or charged to the Capital Accounts of the Interest Holders prior to the Distribution of the assets in liquidation pursuant to *Section* 4.3(a).

(4)    All Profit and Loss shall be allocated and all distributions shall be made to the Persons shown on the records of the Company to have been Interest Holders as of the last day of the taxable year for which the allocation or Distribution is to be made. Notwithstanding the foregoing, unless the Company's taxable year is separated into segments, if there is a Transfer or an Involuntary Withdrawal during the taxable year, the Profit and Loss shall be allocated between the original Interest Holder and the successor on the basis of the number of days each was an Interest Holder during the taxable year; provided, however, the Company's taxable year shall be segregated into two or more segments in order to account for Profit, Loss, or proceeds attributable to any extraordinary non-recurring items of the Company.

(5)    The Interest Holders are aware of the income tax provisions of this Agreement and agree to be bound by these provisions in reporting their share of Profits, Losses, and other items for federal and state income tax purposes.

(c)    *Tax Definitions.* For purposes of this Agreement:

"*Capital Account*" means the account to be maintained by the Company for each Interest Holder in accordance with Regulation Section 1.704-1(b)(2)(iv). If any Economic Interest is transferred pursuant to the terms of this Agreement, the transferee shall succeed to the Capital Account of the transferor to the extent the Capital Account is attributable to the transferred

21

interest. If the book value of Company property is adjusted pursuant to *Exhibit* B Section 4.3(f), the Capital Account of each Interest Holder shall be adjusted to reflect the aggregate adjustment in the same manner as if the Company had recognized gain or loss equal to the amount of such aggregate adjustment. All provisions of this Agreement relating to the maintenance of Capital Accounts shall be interpreted and applied in a manner consistent with Regulation Section 1-704-1(b)(2)(iv).

"*Code*" means the Internal Revenue Code of 1986, as amended, or any corresponding provision of any succeeding revenue law.

"*Negative Capital Account*" means a Capital Account with a balance of less than zero.

"*Positive Capital Account*" means a Capital Account with a balance greater than zero.

"*Profit*" and "*Loss*" means, for each taxable year of the Company (or other period for which Profit or Loss must be computed), the Company's taxable income or loss determined in accordance with Code Section 703(a), with the following adjustments: (i) all items of income, gain, loss, deduction, or credit required to be stated separately pursuant to Code Section 703(a)(1) shall be included in computing taxable income or loss; (ii) any tax-exempt income of the Company, not otherwise taken into account in computing Profit or Loss, shall be included in computing taxable income or loss; (iii) any expenditures of the Company described in Code Section 705(a)(2)(B) (or treated as such pursuant to Regulation Section 1.704-1(b)(2)(iv)(i)) and not otherwise taken into account in computing Profit or Loss, shall be subtracted from taxable income or loss; (iv) gain or loss resulting from any taxable disposition of Company property shall be computed by reference to the book value of the property as adjusted under Regulation Section 1.704-1(b) ("adjusted book value") of the property disposed of, notwithstanding the fact that the adjusted book value differs from the adjusted basis of the property for federal income tax purposes; (v) in lieu of the depreciation, amortization, or cost recovery deductions allowable in computing taxable income or loss, there shall be taken into account the depreciation computed based upon the adjusted book value of the asset; and (vi) notwithstanding any other provision of this definition, any items which are specially allocated pursuant to Exhibit B Section 4.3(a) shall not be taken into account in computing Profit or Loss.

"*Regulation*" means the income tax regulations, including any temporary regulations, from time to time promulgated under the Code.

22

1  DOUGLAS R. ROECA, Esq. CSB 77931
   Attorney at Law
2  3080 Cedar Ravine Road
   Placerville, CA 95667
3  Telephone: (530) 626-2511

4  Attorney for PLACER TITLE COMPANY

5

6

7                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     IN AND FOR THE COUNTY OF EL DORADO

9

10

11 JACOB DEGOLISH, dba ASSEMBLE          )   Case No. 22CV1845
   CAPITAL LLC,                          )
12                                       )   MEMORANDUM OF POINTS AND
                    Plaintiff,           )   AUTHORITIES IN SUPPORT OF DEMURRER
13                                       )   TO COMPLAINT          BY FAX
       vs.                               )
14                                       )   Date: 4-28-23
   PLACER TITLE COMPANY, et al.,         )   Time: 3:00 p.m.
15                                       )   Dept: 3
                    Defendants.          )
16                                       )
                                         )
17

18        Defendant PLACER TITLE COMPANY ("Placer") hereby submits the following memorandum of

19 points and authorities in support of its demurrer to plaintiff's complaint:

20                                       I.

21                              INTRODUCTION

22        This is not a difficult case. Plaintiff JACOB DEGOLISH, dba ASSEMBLE CAPITAL LLC

23 ("Plaintiff") entered into a contract to acquire property from Ginger Mountain Lodge LLC ("Ginger

24 Mountain"). The contract was signed by defendant FLORA BATOON ("Flora"), a member of Ginger

25 Mountain who represented she had the authority to sign for Ginger Mountain. Plaintiff asserts that Ginger

26 Mountain's operating agreement required the approval of both members, and that both Flora, and Placer's

27 escrow agent Lila Rorich ("Lila") knew it. The actual operating agreement contradicts the complaint and

28
   Memorandum of Points and Authorities
   In Support of Demurrer to Complaint              1

states that any member may bind Ginger Mountain in the ordinary course of business, and that Ginger Mountain's business is the buying and selling of real property. Plaintiff asserts that Lila should have disclosed Flora's alleged lack of authority to plaintiff. Plaintiff is incorrect, and the law is unambiguous. An escrow agent has no duty to disclose except in limited circumstances when there is clear evidence of fraud. *Lee v. Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 162; *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711. Such evidence is not present in this case.

## II.

## STATEMENT OF ALLEGATIONS PERTINENT TO PLACER

On or about October 28, 2021, plaintiff entered into a contract with defendant Ginger Mountain under which plaintiff was to purchase real property from Ginger Mountain. (Complaint[1], ¶17.) Flora represented that she was signing the contract on behalf of Ginger Mountain and that she had the authority to sign on its behalf. (¶18.) Plaintiff asserts that the operating agreement, by express and specific reference to articles and paragraphs of the operating agreement, required a majority vote of the members to sign the contract, and that Flora did not have majority approval and knew she lacked authority. (¶¶ 16, 19.)

Plaintiff further alleges that on March 10, 2022, Flora signed multiple addendums to the contract under which she wrongly purported to act on behalf of Ginger Mountain. (¶¶24, 29, 32, 37, 40.) Under Addendum 3, signed on May 17, 2022, plaintiff agreed to release $30,000 of funds in escrow to Ginger Mountain. (¶32.) In reliance on Flora's representations, plaintiff expended more than $135,000 of costs related to acquiring the property. (¶22.) Plaintiff asserts Flora's representations were false because she did not have a majority vote of Ginger Mountain's partners to enter into the contract. (¶23.)

On or about September 12, 2022, Flora signed Addendum 6 to the contract under which an additional $20,000 was to be released from escrow. When the money was not released from escrow, plaintiff contacted Lila Rohrich at Placer. Lila told him that there was another fifty percent owner of Ginger Mountain and that there was a dispute between the partners regarding the sale of the property.

---

[1]Hereinafter the word "Complaint" will be omitted and each ¶ symbol will refer to a paragraph of the complaint.

Memorandum of Points and Authorities
In Support of Demurrer to Complaint                 2

(¶41.) Lila also told plaintiff that she had been aware of the dispute for more than eight months. (¶42.) Lila was unable to explain why Placer released $30,000 from escrow when it had knowledge there was not a valid agreement to sell the property. (¶43.) Plaintiff then backed out of the contract.

In plaintiff's third cause of action, which is the only cause naming Placer, plaintiff asserts that Lila acted at Placer's escrow agent, and that prior to Flora entering the contract with plaintiff, Lila was aware that Flora lacked authority to enter into the contract. (¶73.)[2] Plaintiff also asserts that "Lila had a duty to disclose that Flora did not have the authority to bind Ginger Mountain to the contract with [Plaintiff]." (¶74.)

The underlying flaw and fundamental misrepresentation in plaintiff's allegations is that the complaint misstates the terms of the operating agreement, of which Placer has requested that the court take judicial notice. Paragraph 5.1 says that "each Member shall have the right to act for and bind the Company in the ordinary course of business." Paragraph 2.3 says that the purpose of the Company is to "... purchase, lease, operate, develop, and sell real estate property, and to do all things necessary, convenient or incidental to that purpose." Contrary to the allegations of the complaint, the sale of the property that was the subject of the escrow was clearly within the ordinary course of Ginger Mountain's business. While true that a plaintiff's allegations are normally deemed true on demurrer, under the doctrine of truthful pleading, a should not disregard situations where a complaint contains allegations of fact inconsistent with facts which are judicially noticed - and may be wholly disregarded on demurrer.

### III.

### LEGAL STANDARD FOR DEMURRER

A demurrer tests the legal sufficiency of a plaintiff's complaint and may be brought if "[t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10.) A demurrer must assume the truth of all material facts properly plead, but not contentions, deductions, or conclusions of fact or law. (*Tarmann v. State Farm Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 156.) The

---

[2]This contradicts Plaintiff's allegations in ¶42, in which Plaintiff claims that as of approximately September 14, 2022, Lila had been aware of the lack of authority for a period eight months. Paragraph 42 states that the contract was signed on October 28, 2021, which was approximately eleven months prior to September, 2022.

1  court may sustain a demurrer and deny leave to amend where the complaint is legally and factually
2  insufficient. (See, *P.S. v. San Bernardino City Unified School Dist.* (2009) 174 Cal.App.4th 953-959.)
3  Leave to amend should be denied where the nature of the claim is clear, but liability does not exist under
4  substantive law. (*Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431-436.)

5      In determining the sufficiency of a complaint against demurrer a court will consider matters that
6  may be judicially noticed. (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374. A court may
7  take judicial notice of something that cannot reasonably be controverted, even if it negates an express
8  allegation of the pleading. (*Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d
9  457, 468–469.) The theory is that the pleader should not be allowed to bypass a demurrer by suppressing
10  facts which the court will judicially notice. (*Legg v. Mutual Benefit Health & Accident Assn.* (1960) 184
11  Cal.App.2d 482, 488.

12      The court may take judicial notice of facts not reasonably subject to dispute and capable of
13  immediate and accurate determination by resort to sources of reasonably indisputable accuracy. (Evid
14  .Code §452(h).) In cases in which the complaint paraphrased or recited selected provisions of a contract,
15  the courts have taken judicial notice of the actual contract when the terms are not in question. See *Marina*
16  *Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 130; *Ascherman v.*
17  *General Reinsurance Corp.* (1986) 183 Cal.App.3d 307: 310-311.

18      The reason that courts are permitted to take judicial notice in demurrer proceedings is to
19  discourage sham pleadings. Indeed, "[u]nder the doctrine of truthful pleading, the courts 'will not close
20  their eyes to situations where a complaint contains allegations of fact inconsistent with attached
21  documents, or allegations contrary to facts which are judicially noticed.' [Citation]. "False allegations of
22  fact, inconsistent with annexed documentary exhibits [citation] or contrary to facts judicially noticed
23  [citation], may be disregarded." *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.
24  In short, the presumption of truth normally afforded to plaintiff's allegations can be directly challenged if
25  those allegations are wholly contrary to the very instruments upon which the allegations are based, and
26  can and should be treated as a nullity. *(C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal. App. 4th 1094,
27  1102.)

28

Memorandum of Points and Authorities
In Support of Demurrer to Complaint                    4

1 \\\

2                                    IV.

3          PLACER DID NOT VIOLATE A DUTY TO PLAINTIFF

4     1.    The Limited Nature of the Agency of an Escrow.

5          "An escrow involves the deposit of documents and/or money with a third party to be delivered on

6    the occurrence of some condition." (Miller & Starr, *Cal. Real Estate* (4th ed.) § 6:1; see, Fin. Code, §

7    17003(a).) An escrow holder is an agent and fiduciary of the parties to the escrow. (*Amen v. Merced

8    County Title Co.* (1962) 58 Cal.2d 528, 534; *Rianda v. San Benito Title Guar. Co.* (1950) 35 Cal.2d 170,

9    173.) The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry

10   out the instructions of each of the parties to the escrow. (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73

11   Cal.App.4th 668, 674; *Schaefer v. Manufacturers Bank* (1980) 104 Cal.App.3d 70, 77; *Blackburn v.

12   McCoy* (1934) 1 Cal.App.2d 648, 655.) If the escrow holder fails to carry out an instruction it has

13   contracted to perform, the injured party has a cause of action for breach of contract. (*Amen*, 58 Cal.2d at

14   532.)

15          In delimiting the scope of an escrow holder's fiduciary duties, "[a]n escrow holder must comply

16   strictly with the instructions of the parties." (*Amen*, 58 Cal.2d at 531, internal citations omitted.) In

17   addition, an escrow holder "has no general duty to police the affairs of its depositors"; rather, an escrow

18   holder's obligations are "limited to faithful compliance with [the depositors'] instructions." (*Claussen v.

19   First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 435–436; see, e.g., *Vournas, supra*, 73

20   Cal.App.4th at 674; *Romo v. Stewart Title of California* (1995) 35 Cal.App.4th 1609, 1618, fn. 9;

21   *Schaefer, supra*, 104 Cal.App.3d at 77–78; *Axley v. Transamerica Title Ins. Co.* (1978) 88 Cal.App.3d 1,

22   9.)

23     2.    No Disclosure is Required Except in the Face of Clear Evidence of Fraud.

24          In fact, in *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th

25   705, the California Supreme Court held that there is no duty to disclose suspicions concerning the

26   activities of one party to an escrow to another in the absence of "clear evidence of fraud." *Summit

27   Financial* at 711. While the *Summit Financial* court did not define what clear evidence of fraud would be,

28

the court cited with approval the case of *Lee v. Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 162. In

*Lee* the plaintiff alleged that (1) the escrow holder knew that the payoff amount of first trust deed against

the real property was actually less than the amount that was demanded, and that (2) the escrow holder

knew that the other defendants named in appellants' complaint were defrauding appellants in connection

with the subject real estate transaction and failed to inform appellants of these facts. In upholding the trial

court's sustaining of a demurrer without leave to amend, the *Lee* court stated at p. 161-162:

> "The only question presented here is whether respondents were under the obligation to
> notify appellants of the facts to which plaintiffs alluded in their complaint, assuming (as we
> must in the case of a demurrer) that they were aware of these facts. The gravamen of the
> ninth cause of action is respondents' failure "to disclose." Significantly, appellants neither
> contend or alleged that respondents misrepresented any of the facts connected with the
> escrow itself nor did they allege that respondents colluded with the other defendants to
> defraud plaintiffs or in any way participated in or were parties to the fraudulent acts
> attributed to these defendants. Moreover, they did not allege that respondents were
> negligent in the handling of the escrow or failed to carry out their specific escrow
> instructions. *Put abstractly, the crucial question is whether an escrow holder is under a
> fiduciary duty to go beyond the escrow instructions and to notify each party to the escrow
> of any suspicious fact or circumstance which has come to his attention before or during the
> life of the escrow which could conceivably affect such party even though the fact or
> circumstance is not related to his specific escrow instructions.* [Emphasis added.]

The *Lee* court went on to point out that imposing an obligation on the escrow holder to disclose

knowledge of suspected fraud would be a disincentive for anyone to engage in the escrow business

because it would force the holder:

> "...to decide independently whether to believe the information and disclose it or disbelieve
> it and conceal his knowledge. If he concealed his knowledge he would risk suit. If he
> discloses and the information is inaccurate, he may be sued by all parties to the escrow for
> interfering with their contract. Establishing a rule which would create such a dilemma and
> subject the escrow holder to a high risk of litigation would damage a valuable business
> procedure. Manifestly, appellants' contention, if adopted by judicial fiat, would effectively
> discourage a reasonable and prudent man or company from acting as an escrow holder and
> would ultimately defeat the very purpose for which escrows originated." *Lee* at 163.

### 3. Flora had the Authority to Sign the Contract.

The allegations in the instant case do not rise to the level required by *Summit Financial* and *Lee*.

Quite to the contrary, they do not even identify a improper act. Plaintiff alleges that in October 2021

defendant Flora signed a contract on behalf of Ginger Mountain to sell real property to plaintiff, but that

the contract required the approval of the other member. That allegation is contradicted by the express

terms of the operating agreement:

> "2.3 *Purpose*. The Company is organized to engage in any lawful act or activity for which a limited liability company may be organized under the Beverly-Killea Limited Liability Company Act, *including but not limited to purchase, lease, operate, develop, and sell real estate property, and to do any and all things necessary, convenient, or incidental to that purpose.* (Emphasis added.)
>
> 5.1. *Management*. The Company shall be managed by the Members. *Except as specifically provided otherwise in this Agreement*, each Member shall have the right to act for and bind the Company in the ordinary course of its business." (Emphasis added.)

Paragraph 5.2(d) identifies the only actions overriding 5.1 by requiring a majority vote of the members:

> "5.2(d). The following matters shall require the Vote or consent of the percentage interest of Members indicated after each such item for such action to be approved by the Members:
>
> (1) a decision to continue the business of the company after dissolution of the company (51%);
>
> (2) approval of the transfer of a Membership Interest and admission of an Assignee as a Member (51%). Any such consent to transfer or admission may be unreasonably withheld in the sole and absolute discretion of the consenting party;
>
> (3) an amendment to the Articles of Organization or this Agreement (51%)."

In drafting the operating agreement, at paragraph 2.3 the members not only adopted the statutory language set forth in the first clause, but specified that the business of the company was, among other things, "sell real estate property, and to do all things necessary, convenient, or incidental to that purpose." Hence the sale of real property would by definition be in the ordinary course of business. At 5.1, the operating agreement further specifies that "each Member shall have the right to act for and bind the Company in the ordinary course of its business." And at 5.2(d), the operating agreement identified only three circumstances, each of which is inapplicable, when a majority vote would be required. In short, on its face the operating agreement bequeathed authority on each member to bind the company in the purchase and sale of real property.

That plaintiff expressly identifed specific provisions of the operating agreement in support of his allegations, but then intentionally failed to include the very instrument upon which his complaint is constructed, speaks volumes as to the veracity of his allegations. To be sure, plaintiff's allegation that Flora lacked the authority to bind Ginger Mountain is contradicted by the express terms of the operating

1   agreement to which he cites; thus the allegation should not be given any presumption of trust, but rather
2   treated as a nullity. (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1102. "Under these
3   circumstances, the court will, in hearing on the demurrer, examine the exhibits and treat the pleader's
4   conclusions as surplusage." (*Alphonzo E. Bell Corp. v. Bell View Oil Syndicate* (1941) 46 C.A.2d 684,
5   691; *Moran v. Prime Healthcare Management* (2016) 3 Cal.App.5th 1131, 1145.)

6       In short, it seems evident that, given the declining market and rising interest rates, what appeared
7   to plaintiff to be a good deal in October 2021 did not look like such a good deal in October 2022. He thus
8   asserted that the contract was invalid and created an avenue to recover the money he expended on the
9   transaction. Unfortunately for plaintiff, a reading of the operating agreement establishes that plaintiff's
10  allegations lack any merit and that Placer's demurrer should be sustained.

11      4.      **Even if an Argument can be made that Flora Lacked the Authority to Sign the**
12              **Contract, There was No Duty to Disclose because There was no Clear Evidence of**
13              **Fraud.**

14      According to the complaint, Placer became aware of the alleged lack of partner approval during
15  escrow in approximately January 2022 yet failed to notify plaintiff of the defect. As in *Lee v. Title Ins. &*
16  *Trust Co. supra*, absent are any allegations that Placer misrepresented any facts, that Placer colluded with
17  Flora to defraud plaintiff, or that Placer violated any instructions. The allegation that Placer became
18  aware, during escrow, that majority approval was arguably required to bind Ginger Mountain to the
19  contract is not clear evidence of fraud as mandated by *Summit Financial* and *Lee.* A forced obligation of
20  an escrow to disclose under such circumstances is exactly the rule these courts rejected.

21                                      V.

22                          **THE COMPLAINT IS UNCERTAIN**

23      A complaint that is uncertain or ambiguous is subject to demurrer. (Code Civ. Proc. §430.10(f).) In
24  the instant case, at ¶42 of the complaint, plaintiff claims that as of approximately September 14, 2022,
25  Placer's escrow officer Lila had been aware of Flora's alleged lack of authority to sign the contract for a
26  period eight months. This would mean that Lila had been aware of the alleged fraud since mid-January,
27  2022. Yet at ¶73, plaintiff alleges that Lila was aware of Flora's lack of authority to sign the contract prior
28

Memorandum of Points and Authorities
In Support of Demurrer to Complaint                8

to her actually signing it in October 2021. (¶¶17, 73.) This is a material discrepancy in plaintiff's
allegations that must be clarified. Hence, plaintiff's complaint is uncertain and subject to demurrer.

## VI.

## CONCLUSION

In order to support his claims against Placer, plaintiff has misstated the terms of Ginger Mountain's operating agreement, and obscured its presence in the pleadings, by wrongly asserting that it required majority approval to enter into the purchase agreement. We know from a review of the agreement that this is untrue. Such a false construction is repugnant to the express terms of the agreement and must be rejected and treated as surplusage. (*Stoddard v. Treadwell* (1864) 26 Cal. 294, 303.) There was no clear evidence of fraud. Rather, what we have in plaintiff is a buyer who after nearly a year reconsidered the merits of the transaction and created an excuse not only to terminate the deal but also to recover the money he invested in it.

Finally, the complaint is uncertain as to when Placer's escrow agent became aware of the alleged fraud.

It is respectfully requested that Placer's demurrer be sustained without leave to amend.

Dated: March 17, 2023

DOUGLAS R. ROECA, Attorney
for PLACER TITLE COMPANY

Memorandum of Points and Authorities
In Support of Demurrer to Complaint                    9

## PROOF OF SERVICE

Degolish v. Placer Title Company, et al.                    Case No. 22CV1845

I am a citizen of the United States and employed in El Dorado County, California; I am over the age of eighteen years and not a party to the within action; my business address is 3080 Cedar Ravine Road, Placerville, California 95667.

On **March 17, 2023**, I caused the within MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPLAINT, to be served as follows:

___ MAIL - I am familiar with the business practices of the law offices at 3080 Cedar Ravine Road, Placerville, California for collecting and processing mail and know that the mail in said office is collected and processed so that this piece of mail was deposited with the United States Postal Services on the same date as is indicated above.

___ FACSIMILE - _____, 2023, by use of facsimile machine, I served a true copy of the aforementioned document(s) on the parties to the numbers as set forth below.

**XX** ELECTRONIC MAIL- **March 17, 2023**, via electronic mail, I served a true copy of the aforementioned document(s) on the parties to the numbers as set forth below.

Dana B. Denno
McCormick, Barstow, Sheppard, Wayte & Caruth LLP
4647 North Fresno Street
Fresno, CA 93720
dana.denno@mccormickbarstow.com

Jordan Finfer
Patzik, Frank & Samotny Ldt.
200 S. Wacker, Suite 2700
Chicago, IL 60606
Jfinfer@pfs-law.com

Robert P. Huckaby, Esq.
3330 Lake Tahoe Blvd #10
South Lake Tahoe, CA 96150
huckaby.law@sbcglobal.net
bobhuckaby@aol.com

Debra L. Samuels, Esq.
Samuels Law P.C.
2281 Lava Ridge Court, Suite 300
Roseville, CA 95661
E-mail: Samuels@Samuels-Law.com

Executed on March 17, 2023, at Placerville, California.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Lucille J. Bluemel

Memorandum of Points and Authorities
In Support of Demurrer to Complaint                    10

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 77931 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Douglas R. Roeca | | |
| FIRM NAME: Attorney at Law | | |
| STREET ADDRESS: 3080 Cedar Ravine Road | | |
| CITY: Placerville    STATE: CA    ZIP CODE: 95667 | | |
| TELEPHONE NO.: 530-626-2511    FAX NO.: | | |
| E-MAIL ADDRESS: droeca@droecalaw.com | | |
| ATTORNEY FOR (Name): Placer Title Company | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF EL DORADO
STREET ADDRESS: 1354 Johnson Blvd
MAILING ADDRESS: 1354 Johnson Blvd
CITY AND ZIP CODE: South Lake Tahoe, CA 96150
BRANCH NAME: South Lake Tahoe

Plaintiff/Petitioner:    Jacob DeGolish

Defendant/Respondent:    Placer Title Company, et al.

| DECLARATION OF DEMURRING OR MOVING PARTY REGARDING MEET AND CONFER | CASE NUMBER: 22CV1845 |
|---|---|

*BY FAX*

*To the party filing a demurrer, motion to strike, or motion for judgment on the pleadings: This form must be filed with the demurrer, motion to strike, or motion for judgment on the pleadings.*

1.  (Name of party making declaration): Placer Title Company    was served with

    [x] a complaint    [ ] an amended complaint    [ ] a cross-complaint

    [ ] an answer    [ ] other (specify):

    in the above-titled action and is filing a    [x] demurrer    [ ] motion to strike    [ ] motion for judgment on the pleadings

### DECLARATION (Choose either a. or b.)

2.  a. [x] At least five days before the date a responsive pleading was due to be filed (if I am filing a demurrer or motion to strike) or at least five days before filing a motion for judgment on the pleadings (if I am filing a motion for judgment on the pleadings), I met and conferred with the party who filed the pleading [x] by telephone [ ] in person and we did not reach an agreement resolving the matters raised by the demurrer, motion to strike, or motion for judgment on the pleadings.

    b. [ ] The party who filed the pleading subject to demurrer, motion to strike, or motion for judgment on the pleadings failed to respond to my request to meet and confer or otherwise failed to meet and confer in good faith.

    *To provide additional information, please use form MC-031, Attached Declaration.*

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: March 17, 2023

Douglas R. Roeca
(NAME OF PARTY OR ATTORNEY FOR PARTY)

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

Form Approved for Optional Use
Judicial Council of California
CIV-140 [Rev. January 1, 2019]

**DECLARATION OF DEMURRING OR MOVING PARTY
REGARDING MEET AND CONFER**

Code of Civil Procedure,
§§ 430.41, 435.5, 439
www.courts.ca.gov